MOYNAHAN CONSTRUCTION CO. *v.* WILLIAM E. MOHLER, ETC. ET AL.

[No. 28,338.  Filed November 24, 1947.]

*C. Severin Buschman, Curtis W. Roll, John A. Alexander,* and *Paul J. DeVault,* all of Indianapolis, and *Buschman & Roll,* (of counsel), of Indianapolis, for appellant.

*Joseph J. Daniels, G. R. Redding, Richard O. Ristine,* and *John D. Cochran,* all of Indianapolis, and *Baker & Daniels,* (of counsel), of Indianapolis, for appellees.

O'MALLEY, C. J.—The appellant, an Indiana corporation, commenced this action against the appellee, William E. Mohler, and others. It was claimed by the appellant that it had become associated with the named appellee as a partner for the purpose of doing construction work on housing for veterans.

The evidence disclosed that the appellee Mohler entered into a contract with the United States Federal Public Housing Authority for 1500 units; that he talked with T. A. Moynahan prior to the time he entered into said contract and Moynahan stated that, because of his connections with Congressman Ludlow and the Federal Public Housing Department at Washington, he was in a position to secure the contract for the appellee; that he would use his influence if appellee agreed to pay him 25% of the fee to be received, which was six per cent of the government estimates; that appellee agreed to said proposition and shortly thereafter received the contract from the governmental agency; that the contract was for cost plus a fixed fee based on the housing authority estimates; that a photostatic copy of the contract was turned over to Moynahan and that then Moynahan requested and received a signed memorandum of his agreement with the appellee. It was further shown that Moynahan suggested that it would "look better on his part" if he were permitted to furnish one-fourth of the working capital, together

with a part of the working organization, particularly one Nelson J. Hodgin; that pursuant to such offer the appellant, a corporation, which was wholly owned by T. A. Moynahan, did furnish sums totalling $25,000 and had been paid $11,000 as its share of $44,000 of fees received; that the money so furnished was in the form of checks payable to appellee; that the appellee was, at the time of the trial, worth $180,000 net; that the total liability to the appellant was less than $50,000. From the disputed evidence given, the court could have readily inferred the facts to be as outlined above. There was no evidence of the insolvency of the appellee excepting the bare statement of T. A. Moynahan, which was to the effect that he did not believe the appellee had sufficient working capital to finish the housing contract. There was undisputed evidence that the appellant did not make a partnership report to the Gross Income Tax Division of the State of Indiana; that it included the $11,000 payment from the appellee as income in its general report for both state and federal taxes; that it did not make a partnership return for federal income tax purposes; that it did not make and file a declaration of partnership in the office of the Marion County Clerk; that amounts advanced by it to the appellee were made by check payable to the appellee individually and not to a partnership; that checks received by appellant on the deal were drawn on the business account of the appellee; that the contract with the Federal Public Housing Authority was in the name of the appellee as owner and operator of the Wm. E. Mohler Co.; and that said contract was not assignable.

The court below refused to appoint a receiver *pendente lite,* and from that ruling this appeal has been taken.

In High on Receivers (4th ed.) § 8, p. 14, it is said:

"While it has already been shown that the court, in passing upon the application for a receiver, in no manner forestalls or anticipates the final decision upon the merits, the probability that plaintiff will ultimately be entitled to a decree in his action is still a material element to be considered by the court. And when upon the entire record this is a matter of much doubt, the court is justified, in its discretion, in refusing a receiver. To warrant the relief, therefore, plaintiff should present at least a *prima facie* case, and the court should be satisfied that there is imminent danger of loss unless a receiver is appointed."

On p. 660, § 476, of the same work it is stated:

"When, therefore, the existence of a partnership is directly in dispute, and is denied by defendant, in an action for an accounting, the court will not appoint a receiver *in limine*, especially when there is no allegation of defendant's insolvency, or of his inability to respond in the event of a final recovery against him."

In general, it may be stated that the plaintiff in an action, wherein a receiver *pendente lite* is requested, must show danger of loss or destruction of the property claimed to be partnership assets, in order to secure such appointment. Clark on Receivers (2d ed.) § 178, p. 204. The plaintiff must show the probability of a recovery and that an actual partnership exists. *Hawkins* v. *Aldridge* (1937), 211 Ind. 332, 7 N. E. (2d) 34; 53 C. J., § 13, p. 28. Where there is a remedy at law, a receiver will not be appointed unless it is shown by satisfactory proof that such remedy is neither adequate nor effectual. *Hawkins* v. *Aldridge, supra.* See 45 Am. Jur., § 26, p. 28. The party requesting the appointment must show a present existing interest or at least a probable right or interest

in the property which is to be subjected to the control of the receiver. *Supreme Sitting of the Order of the Iron Hall* v. *Baker* (1893), 134 Ind. 293, 33 N. E. 1128; *The State* v. *The Union National Bank of Muncie, Indiana* (1896), 145 Ind. 537, 44 N. E. 585.

In *Steinbrenner Rubber Co.* v. *Duncan, Rec.* (1927), 86 Ind. App. 218, 222, 155 N. E. 625, 626, the court said:

> "In equity, to authorize the appointment of a receiver, the petitioner must show either a clear legal right in himself to the property in controversy, or that he has some lien upon or property right in it, or that it constitutes a particular fund out of which he is entitled to have satisfaction of his demand. And, it is also essential, before a court exercising simply its equitable jurisdiction is authorized to appoint a receiver, for the complainant to show that he has a present existing interest in the property sought to be placed in the hands of such receiver, and that he has a cause of action of *equitable cognizance* upon which he is likely to prevail, coupled with the fact of imminent danger or peril to the property in question."

In 109 A. L. R. 280, it is stated that a receiver will not be appointed for the property of an individual or partnership, upon the application of a third party, unless the claimant or petitioner has a lien on such property or fund.

In the instant case the evidence was such that the court could reasonably have found that there was an adequate remedy at law even if the relation between the parties was that of a partnership as claimed by the appellant, and since the trial court was exercising a sound legal discretion in passing upon the application for a receiver, we cannot say that the discretion so lodged in the trial court was abused. The court below in its judgment refrained from deter-

mining the question of partnership. However, the appellant insists that a partnership was shown and that the court below erred in its ruling because there was a misuse of the partnership funds. The parol evidence given at the hearing below was in conflict on the subject of the partnership and unless the written evidence is such as to force a conclusion that a partnership existed, a great deal of the appellant's claim will have been dissipated. The written evidence submitted at the trial consisted of a memorandum of the agreement between the parties which contained the following language, to-wit:

"We are to furnish you with one-fourth of the working capital necessary for the carrying out of these various operations. Also furnish you with a part of your organization, particularly our general building superintendent, Mr. Nelson J. Hodgin, and other personnel if required by you and if it is possible for us to secure them for you, and render such other assistance as T. A. Moynahan, President of the Moynahan Construction Company, can considering his experience in construction, planning and management of housing.

"In consideration of the above, the Moynahan Construction Company is to receive one-fourth of the fees received by Wm. E. Mohler Company from the government for its services in connection with the above."

While it is not our purpose to determine whether or not a partnership was formed by the signing of the above letter either alone or when considered in connection with the other evidence given in this cause, it is our intention to decide whether or not such evidence forces the conclusion that there was such a partnership as claimed by the appellant.

It may be stated that when parties agree to do that which in law constitutes or creates a **partnership**, it

is not material that the parties declare that it ∎ shall not be such an association. While the intent of the parties is material, it is the intent to do or to accomplish certain given things as such things are construed in the law.

In the case of *Bradley* v. *Ely* (1900), 24 Ind. App. 2, 4, 5, 56 N. E. 44, 45, that court used the following language:

> "In the construction of a contract, we look to the intention of the parties. As said in George on Part., p. 31: 'But it is the legal, rather than the declared, intention that controls. If the parties intend and do those things which the law declares constitute a partnership, then the parties are partners; and an express stipulation that they do not intend to form a partnership is of no avail. It simply shows that they have mistaken the legal effect of the agreement which they intended to make.' The fact of partnership, in the case before us, depends entirely upon the written agreemnt. . . . From an examination of its terms, we think it quite clear that the parties did not intend to form a partnership. The words which are usually employed in articles embracing the formation of a partnership are wholly wanting. The intention to form a partnership is nowhere in terms expressed. . . . A partnership may be thus defined: If there is a joint undertaking and community of profit and loss, each party sharing in these mutually, and having a specified interest in the profits, not as compensation for services rendered, but as an associate in the undertaking, the relation of partner is formed."

See *Isaacs, Tr.* v. *Fletcher Am. Natl. Bank* (1937), 103 Ind. App. 246, 198 N. E. 829, 200 N. E. 440; *Driscoll* v. *Sullivan* (1917), 186 Ind. 178, 115 N. E. 331; The Law of Partnership by Shumacher (2d ed.) § 10, p. 16 and §§ 14, 15, p. 26.

The basis of a partnership is stated in 40 Am. Jur., § 43, p. 156, in the following words, to-wit:

". . . partnership rests on mutual consent, which may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction in question."

In the memorandum letter on which the appellant relies, it is stated that "we are to furnish you" and "also furnish you" and "secure them for you." These quotations when examined as they appear in said letter, seem to emphasize that the appellant recognized that the appellee was to operate individually and not in partnership with it. Does it not seem that appellant would have stated that it would furnish one-fourth of the common or partnership capital in return for one-fourth of the profits if the parties had intended a partnership? The appellant likewise would have used the words "ours" or "our venture" instead of the objective singular word "you." When that letter is read in the light of the testimony given by the appellee, it seems to us that the lower court was faced with facts which tended to prove that there was an agreement to pay a portion of the fee to the appellant in return for his good offices in inducing the proper Department in Washington to contract with the appellee. At least it does not show that the court was faced with evidence which compelled the conclusion that a partnership relation had been brought into being. We feel that the appellant has not shown that the lower court abused its discretion in refusing to appoint a receiver *pendente lite*.

The decision of the lower court is therefore affirmed.

NOTE.—Reported in 75 N. E. (2d) 540.