In the Matter of Joseph E. NAMOFF and Julius Namoff, Etc., Alleged Bankrupt, Defendants-Appellants,

v.

HYLAND ELECTRICAL SUPPLY COMPANY et al., Plaintiff-Appellee.

No. 12766.

United States Court of Appeals
Seventh Circuit.

Feb. 19, 1960.

Rehearing Denied March 22, 1960.

George Cohan, Max Cohen, Gary, Ind., for appellant.

Porter R. Draper, Gary, Ind. (Stults, Gibson, Custer & Draper, Gary, Ind., of counsel), for appellee.

Before HASTINGS, Chief Judge, and KNOCH and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Hyland Electrical Supply Company, Chauncey's, Inc., both Illinois corpora-

tions with their principal place of business in Chicago, Illinois, and Henry M. Wolf, of Chicago, Illinois, on March 24, 1956, filed in the district court a petition in which it was alleged, among other things, that Joseph E. Namoff and Julius Namoff (sometimes referred to as Julius Namoff, Jr.), both of Hammond, Indiana, were co-partners, trading under the firm names of Chicago Wholesale Distributors and Junior's Country Fair, and that while insolvent the said partnership and Joseph E. Namoff and Julius Namoff each committed an act of bankruptcy in that they had previously made a general assignment for the benefit of creditors. To this petition Joseph E. Namoff filed his consent to adjudication. Julius Namoff filed an answer denying the existence of the partnership and made demand for trial by jury. Petitioning creditors moved to strike the request for jury trial insofar as it related to the issue of the existence of a partnership.

The district court, on November 7, 1956, entered an order allowing the motion to strike insofar as it pertained to the partnership issue and referred such issue to a referee in bankruptcy. The referee, after a rather extensive hearing, submitted his report which included findings of fact, conclusions of law and judgment denying the existence of the partnership. Thereafter, petitioning creditors filed their petition for review. Julius, the alleged bankrupt, filed his motion to dismiss such petition, which motion was denied by the court.

The court, as shown in a memorandum opinion, decided that the material findings as well as the conclusions of law of the referee as they related to the partnership issue were clearly erroneous. Thereupon, the court, on June 18, 1959, entered its judgment, vacating and setting aside that entered by the referee, and allowed the petition for review on the partnership issue. From this judgment Julius, the alleged bankrupt, appeals.

The contested issues as stated by appellant (Julius) are whether (1) the district judge erred in denying his request for a jury trial; (2) the district judge erred in overruling his motion to dismiss the petition for review, and (3) the district judge erred in vacating the judgment of the referee which denied the existence of a partnership between the bankrupt, Joseph, and the alleged bankrupt, Julius, in the operation of the businesses named in the petition.

We think this court is without jurisdiction to entertain contested issues 1 and 2. The notice of appeal seeks a review only of the judgment entered June 18, 1959. Contested issue 1 seeks a review of an order partially denying a jury demand, entered November 7, 1956. Contested issue 2 seeks a review of an order denying a motion to dismiss the petition for review, entered November 20, 1958. Thus, the first order was entered some two and one-half years, and the second order some seven months, prior to the entry of the order appealed from. Clearly, both orders were interlocutory, from which the aggrieved party had a right to appeal. Title 11 U.S.C.A. § 47. Time to appeal, however, is limited to a maximum of forty days from the entry of an allegedly erroneous order. Title 11 U.S.C.A. § 48. If only contested issues 1 and 2 were involved, the appeal would be subject to dismissal. Roberts v. Bank of America Nat. Trust & Savings Ass'n, 9 Cir., 198 F.2d 919; In re Butts, 2 Cir., 123 F.2d 250, 251. The fact that an order was subsequently entered from which an appeal was taken is no aid to the right of review of those previously entered. Of the many cases which have so held we cite two of this court. In re Trust No. 2988 of Foreman Trust & Savings Bank, 7 Cir., 85 F.2d 942, 943, and In re Irving-Austin Bldg. Corp., 7 Cir., 96 F.2d 905, 906.

■ We hold that contested issues 1 and 2 are not subject to review, and there is no point in discussing them. Even so, we have considered the arguments of the respective parties on these issues and have no doubt but that the court's order as to each was correct.

This brings us to the important issue as to whether the district court erred in

entry of the order from which this appeal comes, that is, the order vacating the judgment of the referee on the issue of existence of a partnership. The solution of this issue encompasses the perplexing problem as to our scope of review. A reading of the many cases where the problem has been entertained by courts of various circuits reveals some contrariety of opinion. Appellees seem to believe that the scope of review, as announced by decisions of this court, is broader in this circuit than in some of the others and cite In re Duvall, 7 Cir., 103 F.2d 653; In re United Finance Corp., 7 Cir., 104 F.2d 593, and Webb v. Frisch, 7 Cir., 111 F.2d 887.

There is no doubt but that a district judge is empowered by statute to review the order of a referee. Title 11 U.S.C.A. § 11 provides, "The courts * * of bankruptcy [district courts] are invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title [Bankruptcy] * * * to * * * Consider records, findings, and orders certified to the judges by referees, and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings * * *." This broad statutory power bestowed upon a district court is qualified by General Order in Bankruptcy 47, following Section 53, which provides, " * * * the report of a referee * * * shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

We think it would be a waste of time and effort to discuss or even cite the many cases where courts have attemped to elucidate on the right and power of a reviewing court. We are faced with the problem of either affirming or reversing the order of the district court from which the appeal is taken, which requires a determination as to whether it was erroneously entered. This in turn depends upon whether the district court erred in its findings and conclusion that those made by the referee were "clearly erroneous."

The district court, in connection with its judgment now under review, filed a memorandum opinion in which it discussed the various findings made by the referee in support of his conclusion that no partnership relation existed between Julius and Joseph Namoff. In support of its conclusion to the contrary, the district court in its memorandum expressly found that each of such findings made by the referee was clearly erroneous and stated its reasons therefor. We have made a careful study of the testimony and have no hesitancy in stating that if we were the triers of the facts we would, as the district court did, reach a conclusion different from that of the referee. Even with the serious limitation which General Order 47 places upon the authority of a district court to set aside an order of a referee, we still think the district court reached the correct result.

It must be kept in mind that General Order 47 is directed at the findings of the referee and not at the conclusions drawn therefrom. It is apparent that the referee, erroneously we think, treated the issue of partnership as one of fact. In our judgment, it is a conclusion or at any rate an ultimate fact to be deduced from those which are evidentiary. In Stewart v. Ganey, 5 Cir., 116 F.2d 1010, 1013, the issue was whether there had been a concealment of assets by the bankrupt. The court set aside the finding of concealment made by a referee and held that there was no concealment. The court reasoned that the issue of concealment "was an ultimate question of fact" which could be decided by the district court without regard to General Order 47. Thus, the judgment of the district court, which had vacated the order of the referee, was affirmed. In this connection, we are impressed with the soundness of a statement in Costello v. Fazio, 9 Cir., 256 F.2d 903, 908, "Where a finding of fact by the referee is based upon conflicting evidence, or where the credibility of witnesses is a factor, a district court and, on appeal, a court of ap-

peals will seldom hold such a finding clearly erroneous. The same reluctance is not encountered with regard to a factual conclusion from given facts. In the latter case, the proper conclusion from given facts can be made by the trial judge, or the court of appeals, as well as the referee."

█ That the referee treated the issue of partnership as one of fact is further emphasized by the admission, over objection, of a line of testimony which permitted lay witnesses to express their opinion on that issue. For example, creditors were permitted, over objection, to state in substance that they dealt with Julius and Joseph Namoff as individuals and not as partners. It is reasonable to think that the referee attached weight to this line of improper evidence, and it is equally reasonable to think that the district court, as it had a right to do, discarded it.

It would unduly burden this opinion to give more than a brief summary of the evidence heard by the referee. It is pertinent to note that much of it was documentary, which the district court was in as good a position as the referee to evaluate. For instance, the two businesses in question each maintained an account in the Mercantile National Bank and later in the Calumet National Bank. These accounts for both businesses were obtained in each bank pursuant to a partnership authority. These authorities were substantially in the same form. That given to the Calumet National Bank reads, "The undersigned desire to establish with you a demand deposit and checking account to be known as Chicago Wholesale Distributors, and the undersigned hereby certify that the said name is a partnership trade name used in the conduct of an unincorporated business, owned entirely by the undersigned as co-partners." This authority further stated, "We have agreed that checks and orders for the payment of money withdrawing funds from said account may be signed in the name of the partnership by any one (1) of the following named persons: Joseph Namoff, Ida Namoff

[wife of Joseph], Julius Namoff." Each of these parties signed the authority as a partner in Chicago Wholesale Distributors. The similar authority given to the Mercantile National Bank provided that only two persons were permitted to draw on said account, namely, Julius Namoff, Jr. and Ida Namoff. In this connection, it is significant that while Joseph claimed to be the sole proprietor of the businesses he was not permitted to draw checks on the account maintained in the Mercantile National Bank. On the other hand, Julius, who denies he was a partner, was one of the two persons authorized to draw on this account. On at least two occasions money was borrowed from the banks on notes signed by Julius, Ida and Joseph, and deposited in the accounts of the businesses. Payments of these bank loans were made by checks on which Julius was a co-signer, on the accounts of the businesses.

During the relevant period there were in force and effect at least four insurance policies covering the named businesses. These policies were purchased and issued in the names of Joseph E. Namoff and Julius Namoff, doing business as Junior's Country Fair and Chicago Wholesale Distributors. Another policy was issued in the name of Julius Namoff, naming Julius as assured, d/b/a Junior's Country Fair, located at 7046 Kennedy Avenue, Hammond, Indiana. At least six other policies listed Julius, d/b/a Junior's Country Fair. All of these policies were paid for out of the accounts of the alleged partnership business. Julius was insured under a Blue Cross Hospitalization policy purchased and paid for by the businesses. An invoice for merchandise, addressed to Julius, was paid by check signed by Julius and drawn on the account of Chicago Wholesale Distributors. The original deposit required to obtain electrical service for the said businesses was paid by Julius. A store license was purchased by Julius for Junior's Country Fair. Throughout the conduct of these businesses trucks were used which were owned by Julius and registered in his name.

**18**

Checks for car expense were drawn on these business accounts, payable to Julius. Receipt forms were used which listed a business admittedly owned by Julius individually and one of the businesses in question. Julius carried an Illinois Bell Telephone credit card issued and paid for by the named businesses.

The above is a brief résumé of the documentary proof. There was also testimony that Julius had stated that he and his brother were in business together, and that Julius represented to an agent of Dun and Bradstreet that he was the principal owner of Chicago Wholesale Distributors. On the other hand, there was testimony, largely that of Julius and Joseph, which attempted to explain or refute the documentary proof. There was also, as previously discussed, improperly received testimony by witnesses who were permitted to express an opinion upon the partnership issue.

It appears that the referee attached weight to the fact that there was no proof of a formal partnership agreement between Julius and Joseph and to their denial that such a relation existed. In response to this reasoning, the district court stated, and we think properly:

"It is true that there is no evidence in the record of any written or oral partnership agreements between Joseph E. Namoff and Julius Namoff. However, a partnership may exist in law in the absence of a formal partnership arrangement, written or oral, and even in the face of an express stipulation that the alleged partners do not intend to form partnership. This is settled law. One late enunciation of the principle in Indiana is found in Moynahan Const. Co. v. Mohler, 225 Ind. 379, 75 N.E.2d 540. There the court said:

" 'It may be stated that when parties agree to do that which in law constitutes or creates a partnership, it is not material that the parties declare that it shall not be such an association. While the intent of the parties is material, it is the intent to do or to accomplish certain given things as such things are construed in the law.' "

 We think it plain that the acts and conduct of Julius and Joseph relative to the named businesses were such as to make them partners as a matter of law. This is so irrespective of what their intentions might have been in that respect.

The order appealed from is

Affirmed.