In the Matter of Geraldine Minnick.
Geraldine MINNICK, Appellant,

v.

LAFAYETTE LOAN & TRUST CO.,
Appellee.

In the Matter of Leland Lafayette
Minnick.
Leland Lafayette MINNICK, Appellant,

v.

LAFAYETTE LOAN & TRUST CO.,
Appellee.

No. 16407-8.

United States Court of Appeals
Seventh Circuit.

Feb. 20, 1968.

J. Frederick Hoffman, Lafayette, Ind., for appellants.

William C. Burns, Harry P. Schultz, Lafayette, Ind., for appellee, Schultz, Ewan & Burns, Lafayette, Ind., of counsel.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

These are appeals by bankrupts, husband and wife, from orders of the district court affirming orders of the referee in bankruptcy denying the bankrupts their discharges in bankruptcy, following the objection of a creditor.

In No. 16407, the appealing bankrupt is Geraldine Minnick, the wife. In No. 16408, the appealing bankrupt is Leland Lafayette Minnick, the husband. The objecting creditor is Lafayette Loan & Trust Co., appellee. Both appeals have been consolidated in this court and will be treated jointly, as they were in the district court.

Geraldine Minnick was duly adjudicated a bankrupt on January 13, 1966, the day she filed her voluntary petition in bankruptcy. Similar action was taken with respect to Leland Lafayette Minnick on January 16, 1966, when he filed his voluntary petition in bankruptcy.

A first meeting of creditors was held on February 11, 1966, at which time George E. Weigle of Lafayette, Indiana was appointed as trustee in each case.

March 11, 1966 was set as the last day for filing objections to discharge. On that date, appellee filed specifications of objections to each discharge alleging that on December 23, 1965, the bankrupts disposed of their home for $500, when their equity therein was $3,466.36, and that this was done "to secrete and hide assets from the lawful claims of petitioner and other creditors."

Objections filed by two other creditors are not the subject of this appeal and may be disregarded.

On June 2, 1966, a hearing was had on the objections before the referee. No stenographic record was made of the evidence. However, a summary of the evidence at this hearing was prepared and signed by the attorneys for all parties and made a part of the record below.

On August 23, 1966, based on the evidence at the hearing, the referee denied a discharge to each bankrupt following entry of findings of fact and conclusions of law.

The referee found, *inter alia*, that bankrupts' equity in their residential real estate was not less than $2,500. He then found in each case:

"8. Said bankrupts testified that the consideration for said conveyance was $500.00 in cash and the cancellation of said $250.00 indebtedness, but the Court finds that the purpose and intent of both bankrupts in making said conveyance was to secrete and hide assets from claims of creditors and that said action amounted to fraud and deceit as to other creditors."

Based on this finding, a discharge was denied to each bankrupt.

Petitions for review were filed and entertained by the district court. The trial court considered the summary of evidence agreed on, the findings and conclusions of the referee and the respective pleadings and briefs of the parties. No new evidence was adduced. In substance, the court held:

"While this court cannot say that the record is devoid of any evidence that might support a contrary finding by the referee—there is some indication that the real estate was subject to unpaid property taxes and to approximately $400.00 in back mortgage payments, and this would tend to lessen the disparity between the owners' equity and what they were found to have received therefor—the finding of actual intent to hide and secrete assets is not, on the present record, clearly erroneous. The referee's findings, under the particular circumstances of the case, give the court a reasonable indication of the basis upon which his factual conclusions rested and are thus unassailable in that respect. [citing cases] * * *."

After considering all the referee's findings, including Finding 8, supra, the court determined that, under § 14(c) of the Bankruptcy Act,[1] it would not dis-

---

1. Section 14(c) (4) of the Bankruptcy Act, 11 U.S.C.A. § 32(c) (4) provides in relevant part: "The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed * * * any of his property with intent to hinder, delay, or defraud his creditors; * * *."

turb such findings and affirmed the referee's denial of discharge on the basis of appellee's objections.

The sole issue before us on this appeal is whether the district court erred in affirming the denial of a discharge in bankruptcy to each bankrupt.

Implicit in the resolution of this primary issue are two underlying questions raised by appellants: (a) does the "clearly erroneous" rule apply in reviewing a finding of the referee that property has been conveyed with intent to defraud creditors, and (2) was the finding of the referee that the home of bankrupts had been conveyed with intent to defraud creditors supported by the evidence.

The evidence on this issue as contained in the summary of evidence filed and in the bankruptcy schedules is indeed brief and largely undisputed.

In their voluntary petitions in bankruptcy, in answer to Question 10 of the Statement of Affairs concerning property transferred within the last year (prior to January, 1966) each bankrupt answered:

"Home at 2400 Roosevelt Street, Lafayette, Indiana, legally described as Lot 123 in Belmont Addition to the City of Lafayette, Indiana; sold in December, 1965, to O. C. Greives, 52 By Pass, Lafayette, Ind., for Five Hundred ($500.00) Dollars plus assumption of mortgage of Seven Thousand Eight Hundred ($7,800.00) Dollars and all back taxes and back mortgage payments. No relation. Money used on bills and to attorney."

"1960 Thunderbird automobile repossessed by Glenn R. Pittman, Inc., 5th & South Streets, Lafayette, Indiana."

In appellee's objection to the discharge, it alleged in substance that on December 23, 1965, bankrupts disposed of their home for $500, when at that time the value of such real estate was at least $11,000, subject to a mortgage of $7,533.-64, with a resultant net equity of $3,466.-36, and that "it appears that the said bankrupt has undertaken to secrete and hide assets * * * and [such] conduct herein has been fraudulent and deceitful and in conflict with the provisions of the Federal 'Bankruptcy Act.'"

The only witness for appellee, a vice-president of Lafayette Loan & Trust Co., merely testified that on October 25, 1963, when bankrupts borrowed money from appellee, they told him they then owed $8,300 on their home, and also testified concerning the subsequent conveyance to Greives and the current mortgage balance of $7,533.64.

It appears from the schedules that Lafayette Loan & Trust Co. was an unsecured creditor on personal loans made to the bankrupts. The other two objecting creditors were small loan companies.

The referee found that bankrupts testified they had about $10,000 invested in the real estate showing a mortgage indebtedness of about $7,000, but that other evidence indicated the indebtedness as being about $7,500; that they owed Greives $250 (on a grocery bill) at the time of the conveyance to him; that bankrupts' equity in the real estate was not less than $2,500; that bankrupts testified the consideration for said conveyance was $500 in cash and cancellation of the $250 indebtedness (to Greives).

One witness for an objecting small loan creditor testified that in October, 1965, when the bankrupt wife was refinancing a loan, she told him their home was worth $23,000 and their debts were less than $4,000. It is significant that the referee makes no mention of this unsupported testimony.

It is undisputed that prior to the sale of their home to Greives, bankrupts were $400 (4 months) delinquent on their real estate mortgage payments; their automobile had been repossessed; and they needed money to begin personal voluntary bankruptcy proceedings. They had chattel loans, numerous other personal loans and were otherwise being hard pressed by creditors. They owed Greives $250 and were about $200 delinquent in taxes.

Bankrupts purchased their home about 1947 or 1948 for $6,800, subsequently remodeled and improved it and unsuccessfully tried to sell it in 1962–1963 through the Gard Agency for $10,500. They did not thereafter list it for sale.

A friend of bankrupts suggested that Greives sometimes purchased houses. Bankrupt wife first spoke to him about selling it in October or November, 1965. He tried to sell it at $10,100 but failed. Being pressed, bankrupts asked Greives if he would buy it and Greives said he would be happy "to help you kids out." They then sold it to Greives on December 23, 1965 for $500 cash, subject to the mortgage and taxes, and cancellation of their bill of $250 for groceries. They stated to Greives they needed the money to go into bankruptcy.

Bankrupts received the $500 cash, paid $450 of this to their attorney for filing fees and attorneys' fees in the two bankruptcy proceedings, and used the other $50 to pay a few small bills. They remained in the house for a little over two months before moving out and paid Greives $100 per month rent, the amount of the mortgage payment. They had asked Greives for more money on the sale price but he refused to go any higher.

█ In general, no other evidence was adduced. *The only claim by appellee was concerning the amount of equity bankrupts had in their home.* We have fully reviewed the entire record. It is completely devoid of any evidence to support a finding that bankrupts secreted or hid assets of any kind. To draw an inference from this record that would permit the referee to find "that the purpose and intent of both bankrupts in making said conveyance was to secrete and hide assets from claims of creditors and that said action amounted to fraud and deceit as to other creditors" is to indulge in speculation and surmise.

Bankrupts openly revealed at all times the conveyance of their home to Greives and the terms of the sale. The objecting creditor thought bankrupts had a net equity of $3,466.36. The referee found

it "was not less than $2,500." Bankrupts did not put a value on the equity but stated the figures represented in the transaction. The objecting creditor's stated objection to the discharge was concerned only with the amount of equity bankrupts had in their home. The facts are undisputed. This appears to us to be a far cry from hiding and secreting assets from claims of creditors.

█ Finding 8, supra, made by the referee must be set aside as being without support in the record, and if in its entirety it be a finding of fact, then it is clearly erroneous. In our judgment, a clear mistake has been made.

As a resulting consequence, the order of the district court affirming the order of the referee on the referee's findings will be reversed. In re Schweizer, 7 Cir., 271 F.2d 95 (1959).

While this holding is sufficient to warrant a reversal, bankrupts urge the contention that the district court erred in applying the "clearly erroneous" rule in reviewing the referee's findings.

The broad statutory power conferred upon a district court to review orders of a referee under 11 U.S.C.A. § 11, is qualified by General Order in Bankruptcy No. 47, following 11 U.S.C.A. § 53, which provides that " * * * the report of a referee * * * shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. * * * "

█ It seems to be well settled, however, that General Order 47 is directed to *findings of fact* by the referee and not to legal conclusions to be drawn therefrom.

Judge Major, speaking for our court, reviewed this question in Namoff v. Hyland Electrical Supply Company, 7 Cir., 275 F.2d 14, 16, cert. denied, 364 U.S. 818, 81 S.Ct. 51, 5 L.Ed.2d 49 (1960). And, in *Namoff*, we cited with approval the holding in Stewart v. Ganey, 5 Cir., 116 F.2d 1010, 1013 (1941). There the issue was whether there had been a concealment of assets by the bankrupt.

The court held this to be "an ultimate question of fact" without the strictures of General Order 47 being binding on the district court in reviewing the referee's finding.[2]

■ So, in the case at bar, in reviewing the referee's Finding 8, supra, that part referring to evidentiary facts comes within the clearly erroneous rule. However, if the ultimate finding or legal effect to be drawn therefrom is that thereby bankrupts hid and secreted assets with the purpose and intent to defraud and deceive creditors, such evidentiary facts being undisputed, this would appear to be a conclusion to which the clearly erroneous rule has no application on review.

However, be that as it may, for the purposes of this opinion, if Finding 8 in its entirety be a finding of fact, it is clearly erroneous. If it be a reviewable conclusion, the legal effect given by the referee is incorrect.

■■ Finally, it is well established that Section 14(c) of the Bankruptcy Act, supra, must be liberally construed in favor of the bankrupts and the burden of proof is on the objecting creditor, not on the bankrupts. There must be proof of actual intent to defraud such creditor. In re Schweizer, supra, 271 F.2d at 97. Appellee, the objecting creditor, has not carried its burden, as shown by the record in this case.

The learned district court gave extensive consideration to the question of whether the status of the real estate held by bankrupts as tenants by the entireties caused its transfer to be exempt from the claims of creditors, thereby affording no basis for a denial of a discharge in bankruptcy. In light of our disposition of this appeal on other grounds, we do not reach or pass upon this interesting inquiry.

For the foregoing reasons, the orders of the district court appealed from are reversed. The discharges from bankruptcy should issue. These causes are remanded to the district court with directions to grant a discharge in bankruptcy to each appellant.

Reversed and remanded.

---

2. The cases are legion on all phases of this question, but see generally, Phoenix Title & Trust Company v. Stewart, 9 Cir., 337 F.2d 978, 985, cert. denied, 380 U.S. 979, 85 S.Ct. 1335, 14 L.Ed.2d 273 (1964); Solomon v. Northwestern State Bank, 8 Cir., 327 F.2d 720, 724 (1964); Lama Company v. Union Bank, 9 Cir., 315 F.2d 750, 752 (1963).