In the Matter of Evelyn **HALPERN**, Appellant,

v.

Warren C. **SCHWARTZ**, Trustee in Bankruptcy, Appellee.

No. 458, Docket 34224.

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1970.

Decided May 8, 1970.

Julius Zizmor, New York City, for appellant.

Warren C. Schwartz, Schwartz & Duberstein, Brooklyn, N. Y., for appellee.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Evelyn Halpern, bankrupt, appeals from an order of March 5, 1969 of the District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge*, affirming the order of the referee in bankruptcy which denied on summary judgment Evelyn's discharge on the ground that the claims made in the trustee's (Schwartz's) specification of objections to her discharge were concluded by the prior judgment in which she was involuntarily adjudicated bankrupt. We hold that the judgment in the bankruptcy adjudication is not a bar under the doctrine of collateral estoppel to Evelyn's contesting the claims made in the specification of objections to her discharge,

and therefore we reverse and direct the district court to order the referee to entertain Evelyn's opposition to the specification.

The relevant facts are as follows. In 1963, Evelyn's husband, Joseph, owned most of the shares of the Vaughn Corporation which was engaged in the construction business. Evelyn and her son, David, owned a minimal number of shares in the company. Vaughn borrowed a substantial amount of money from the Chase Manhattan Bank, secured by Joseph, Evelyn and David as guarantors in their individual capacities. Vaughn then suffered financial difficulties which were aggravated by the collapse of its cofferdam on March 16, 1963. Thereafter Vaughn deteriorated rapidly and finally lost its current construction contract on May 17, 1963.

In order to arrange the liabilities *inter se* so that Joseph and Evelyn were primarily liable to Chase as guarantors on the Vaughn loan and David only secondarily liable, and in order to indemnify David for any possible liability he might incur as a guarantor, Joseph and Evelyn, on April 8, 1963, assigned to David a mortgage and bond worth about $80,000 (at which time Vaughn was liable to Chase for $100,000). The assignment was never perfected by recording under New York Real Property Law, McKinney's Consol. Laws, c. 50, § 291 (McKinney 1968). See 11 U.S.C. §§ 21, 96, 107 (1968). Vaughn having become insolvent, the three Halperns became individually liable to Chase as guarantors.

On January 30, 1964, Chase filed virtually identical involuntary petitions of bankruptcy against Joseph and Evelyn. The petitions alleged that in assigning the mortgage and bond to David, Joseph and Evelyn: (1) conveyed, transferred, concealed, or removed valuable property with intent to hinder, delay and defraud their creditors (an act of bankruptcy under section 3a(1) of the Bankruptcy Act ["Act"], 11 U.S.C. § 21(a) (1)); and (2) transferred valuable property while insolvent to creditors with the intent to prefer such creditors over others

of the same class (an act of bankruptcy under section 3a(2) of the Act, 11 U.S.C. §§ 21(a) (2), 96). Trial was held before Judge Rosling in the District Court for the Eastern District of New York. Although contesting the petition against her, Evelyn neither appeared nor testified at trial; instead she relied on the testimony of her husband Joseph.

Judge Rosling, by opinions of February 18, 1965 and decrees of March 5, 1965, declared each spouse bankrupt, finding that the assignment to David of the mortgage and bond was an act of bankruptcy on three statutory grounds: (1) it was a removal of property with intent to hinder and delay creditors under section 3a(1) of the Act; (2) it was a transfer of property under section 3a (1), fraudulent as to creditors as defined in section 67 of the Act, 11 U.S.C. § 107(d) (2); and (3) it was a preferential transfer of property under section 3a(2) as defined in section 60 of the Act, 11 U.S.C. § 96. The matter was then referred to the referee in bankruptcy, Honorable William J. Rudin. Appellee Schwartz qualified as trustee on April 5, 1965.

The spouses pressed joint appeals to this court of their adjudications of bankruptcy arguing that there was inadequate proof of an assignment to David, that Chase was estopped since if there were a preferential transfer, Chase was preferred, and that Judge Rosling made impermissible inferences from the failure of Evelyn and David to testify. After oral argument, this court affirmed in open court without opinion. In re Halpern, Docket Nos. 29704–05 (2d Cir. June 10, 1965).

Trustee Schwartz opposed Evelyn's discharge from bankruptcy under section 14 of the Act, 11 U.S.C. § 32, by filing specification of objection number 3 to her discharge. That specification charged:

"3. On or about April 8, 1963, * * * she transferred and removed a valuable bond and mortgage owned in part by her on realty in Suffolk County, to her son I. David Halpern, with intent

to hinder, delay, or defraud her creditors."

Section 14c(4) of the Act, 11 U.S.C. § 32(c) (4) provides that:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) * * * transferred, removed, destroyed, or concealed * * * any of his property, with intent to hinder, delay, or defraud his creditors * * *."

The trustee then moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment denying Evelyn a discharge on the ground there was no defense to specification number 3 because the issue had been concluded in the bankruptcy adjudication and was now *res judicata*. Evelyn made a cross-motion for summary judgment dismissing specification number 3 and granting her a discharge. Referee Rudin, in a considered opinion of June 11, 1968, granted summary judgment for the trustee denying a discharge to Evelyn, and denied her cross-motion for summary judgment. On petition to the district court for review, Judge Dooling, on March 5, 1969, affirmed the referee's order.

In order to deny discharge to a bankrupt under section 14c(4) of the Act, 11 U.S.C. § 32(c) (4), the court must find that the transfer or removal of property in question was effected with actual intent to hinder, delay, or defraud creditors. Minnick v. Lafayette Loan & Trust Co., 392 F.2d 973, 977 (7 Cir. 1968); In re Pioch, 235 F.2d 903, 905–906 (3d Cir. 1956); In re Richter, 57 F.2d 159, 160 (2d Cir. 1932); In re Simon, 197 F.Supp. 301, 303 (S.D.N.Y. 1961). Therefore, one prerequisite to sustaining the summary denial of Evelyn's discharge on the ground of collateral estoppel is that in the prior adjudication of bankruptcy Judge Rosling found actual intent to hinder, delay or defraud creditors. See Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165 (1923); Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1919); Friend v. Talcott,

228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913). Only one of Judge Rosling's three legal bases for finding an act of bankruptcy necessarily involved a finding of actual intent. Thus, his finding that the assignment was a preferential transfer under section 3a(2) of the Act as defined in section 60, required no inquiry into the bankrupt's intent since the effect of the transfer is the sole criterion of whether it is preferential. 11 U.S.C. § 96(a) (1); In re Julius Bros., 217 F. 3 (2d Cir. 1914). Nor did his finding that the assignment was a transfer of property "fraudulent within the intent of § 3a(1) under the provisions of § 67" of the Act, 11 U.S.C. §§ 21(a) (1), 107, entail a finding of any actual fraudulent intent. The requisite intent for finding an act of bankruptcy based on a fraudulent transfer is set out in sections 67 and 70 of the Act, 11 U.S.C. §§ 107, 110. Section 67d(2) provides that a transfer is fraudulent *without regard to the bankrupt's actual intent*, if made while insolvent and without fair consideration. And section 70e(1) refers to the state law applicable to the transfer. New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 273 (McKinney 1945) provides that a conveyance by an insolvent without fair consideration "is fraudulent as to creditors without regard to his actual intent."

Therefore only one of Judge Rosling's three grounds for adjudication necessarily entailed a finding of actual intent, namely his conclusion that the assignment was "a removal of a part of the property of the said assignors with intent to hinder and delay the creditors of the said bankrupt" within the meaning of section 3a(1) of the Act, 11 U.S.C. § 21(a) (1).

It was with great care that the court below affirmed the denial of a discharge to Evelyn on the ground that this one finding by Judge Rosling concluded the issue of actual intent alleged in the specification of objection number 3 under section 14c(4), 11 U.S.C. § 32(c) (4).

This case presents a unique issue in the law of collateral estoppel which has

not been analyzed exhaustively by any court. When the prior judgment rested on several (here three) independent, alternative grounds, is that judgment conclusive as to the facts which were necessarily found in order to establish only one separate ground? We conclude that on the facts before us it is not.

■ It is well established that although an issue was fully litigated and a finding on the issue was made in the prior litigation, the prior judgment will not foreclose reconsideration of the same issue if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment. Norton v. Larney, 266 U.S. 511, 517, 45 S.Ct. 145, 69 L.Ed. 413 (1925); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304, 344 F.2d 300, 306 (9 Cir. 1965); United States v. Rodiek, 117 F.2d 588, 593 (2d Cir. 1941), aff'd, 315 U.S. 783, 62 S.Ct. 793, 86 L. Ed. 1190 (1942); Restatement of the Law of Judgments § 68, Comment o (1942); 1B Moore, Federal Practice ¶0.443[5] at 3919 (1965). The reason for this rule is twofold. First, the decision on an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues, since a different disposition of the inessential issue would not affect the judgment. Irving Nat'l Bank v. Law, 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.). Second, the decision on an inessential issue in the prior judgment was not subject to the important safeguard as to its correctness, to wit: a contested review on appeal. An appeal from the prior judgment by the losing litigant, asserting error in the determination of an issue not central to the judgment, probably would be deemed frivolous by the appellate court, which would affirm without considering the merits of the claim of alleged error. Moreover, the losing liti-

gant, unless he foresaw a potential collateral effect, would have little motivation to take an appeal from an alleged error which had no effect on the judgment. Finally, even if the losing litigant were to take an appeal, the winning litigant might not diligently oppose the claim of error on the merits, since he could demur, in effect, and rely solely on the argument that the claimed error was not essential to the judgment.

The same two considerations are present in the case (as here) of the conclusiveness of a prior judgment which is based on more than one alternative, independent ground. First, if the court in the prior case were sure as to one of the alternative grounds and this ground by itself was sufficient to support the judgment, then it may not feel as constrained to give rigorous consideration to the alternative grounds. Note, Developments in the Law, Res Judicata, 65 Harv. L.Rev. 818, 845 (1952). In the present case, a finding of a transfer while insolvent was sufficient without inquiry into Evelyn's intent under sections 3a(1) and 67 to establish the act of bankruptcy which supported the adjudication. Also, the finding that the transfer had the effect of preferring creditors, was sufficient under section 3a(2) to establish the act of bankruptcy. Therefore Judge Rosling may have made the determination as to Evelyn's intent in connection with the alternative ground of removal of property with confidence that nothing turned on the decision.[1]

Second, since there are alternative grounds which could independently support the prior judgment, vigorous review of an asserted error as to one ground probably would not occur. The losing litigant would have little motivation to appeal from an alleged erroneous finding in connection with one of several independent alternative grounds, since even if his claim of error were sustained, the judgment would be affirmed on one

---

1. It may be noted that Evelyn did not testify, and that the determination as to intent in her adjudication echoes that in Joseph's case, based in part on his demeanor on the stand, while it is not at all clear that her interest in the bond and mortgage was substantial, if any, while Joseph's was at least a far greater interest.

of the other grounds. This in fact happened in Evelyn's appeal from the involuntary adjudication: she claimed on appeal that there was no assignment at all (which, if correct, would invalidate all three alternative grounds) but made no attack on the finding as to her intent.

It would be unwise to require a losing litigant in bankruptcy to take an appeal from alleged errors in one alternative ground simply to ward off the conclusive effect of collateral estoppel on a later discharge proceeding, when on appeal the court could affirm on one of the other alternative grounds. This seems particularly so in bankruptcy litigation, when debtors particularly are often handicapped in financing litigation in the pre-discharge stages of the proceeding. But see Sheldon v. Edwards, 35 N.Y. (8 Tiffany) 279, 287–288 (1866). The losing litigant may not have the foresight to see that the allegedly erroneous ground may have unwanted collateral effects in the future, and hence if not clairvoyant, he may fall into a trap. Second, the winning litigant would not vigorously oppose the merits of the appeal as to one ground since he would simply stress the existence of alternative grounds on which to affirm.[2] So, if the appellate court were to consider the merits of the claim of error, it might not have the benefit of adversary argument on the merits. And if the appellate court were to choose to avoid the merits of the claim of error on one ground, and affirm solely on the basis of one or several of the other alternative grounds, some courts have held that the lower court judgment is con-

clusive as to the allegedly erroneous ground despite the appellate court's unwillingness to rely on it. See, e.g., Bank of American Nat'l Trust & Savings Ass'n v. McLaughlin Land & Livestock Co., 40 Cal.App.2d 620, 105 P.2d 607 (D.C.App., 1st D.1940); Clark v. Knox, 32 Colo. 342, 76 P. 372 (1904); contra International Refugee Organization v. Republic S.S. Corp., 189 F.2d 858, 862 (4 Cir. 1951); 1B Moore, Federal Practice ¶0.-443[5] at 3921 n. 10. Even if the appellate court's affirmance on narrower grounds removes the conclusive effect as to grounds not relied on in the affirmance, the requirement of taking an appeal to protect issues in future collateral suits would not serve one important purpose of the doctrine of collateral estoppel, to minimize litigation and bring it to an end. Such a requirement would, in effect, require cautionary appeals litigating issues on appeal for their possible effect on future indeterminate collateral litigation, which neither party can be sure will occur. The rule at best would preclude some future trial litigation at the expense of currently creating extra appellate litigation.

We therefore hold that when a prior judgment adjudicating one a bankrupt rests on two or more independent alternative grounds, it is not conclusive as to issues in trial of objections to discharge which issues were necessarily found in order to establish only one of those grounds.[3] In so holding, we think distinguishable the only other case we have found in this circuit which ruled on a somewhat similar issue, Kessler v. Arm-

2. Often the winning litigant would have little interest in preserving the conclusiveness of the allegedly erroneous ground since he may not be a party to the future collateral litigation. Indeed, Chase may have had little interest at the time of the involuntary suit in establishing for the future trustee in bankruptcy an unassailable bar to Evelyn's future application for a discharge. Moreover, Chase would have nothing to lose and would not feel constrained to prove actual intent for these collateral purposes if it could establish the alternative grounds, since if it failed to prove actual intent, this would

not be a bar on the trustee when he later opposed the application for a discharge. See, In re Sears, Humbert & Co., 128 F. 275 (2d Cir. 1904).

3. If the prior judgment rests on the finding of a fact necessary to establish all alternative grounds, then the judgment is conclusive as to this fact. The initial determination of this fact was essential to the judgment on whatever ground it might be rested. And on appeal, a claim of error as to this finding, if sustained, would require reversal.

strong Cork Co., 158 F. 744 (2d Cir. 1907), cert. denied sub nom. Sexton v. Armstrong Cork Co., 207 U.S. 597, 28 S.Ct. 262, 52 L.Ed. 357 (1908). To the extent that Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204 (1953), Sheldon v. Edwards, 35 N.Y. (8 Tiffany) 279 (1866), Annot., 133 A.L.R. 840, 846 (1941) are to the contrary, we decline to follow them.[4]

In Kessler v. Armstrong Cork Co., where a French tribunal had dismissed both because plaintiffs had no standing and on the merits, the court declined to consider either ground as dictum. The force of the ruling as a precedent here is somewhat questionable, however, for the court because of lack of privity of the parties proceeded to redetermine the case on the merits arriving at a contrary result to that reached by the French tribunal.

We do not reach appellant's contention that privity is necessarily lacking here, but feel that the application of the doctrine is error under the circumstances. The trap for the unwary created by the diverse requirements for adjudication and discharge makes it altogether too likely that error may be frozen or made permanent without a genuine adversary presentation and review of the essential issue of actual fraud. It is true that a contrary position in some comparable situations is apparently taken by the Restatement of Judgments and various

---

4. After an exhaustive search, the three cases cited in the text are the only ones we have found contrary to our present holding. It is instructive to point out the differences between the present case and those commonly cited for the contrary position.

In Florida C.R.R. v. Schutte, 103 U.S. (13 Otto) 118, 26 L.Ed. 327 (1881), the Court held that one of two alternative grounds supporting a prior state judgment determined the issue in the present case. But the issue determined in the prior state judgment was a legal question as to the applicability of a state statute. The Court, therefore, was not giving the state judgment the conclusive effect of collateral estoppel, but rather was affording the customary respect due to the determination of the state's highest court as to interpretations of local law, even though that determination was an alternative ground for the state judgment.

In Irvington Nat'l Bank v. Law, 10 F.2d 721 (2d Cir. 1926), Judge Learned Hand used language often cited for the position contrary to the one we now take: " * * * if a court decides a case on two grounds, each is a good estoppel." But that case was significantly different. The prior judgment was not based on alternative grounds, but rather on a single legal theory which required the finding of several facts. In the second litigation, defendant sought to avoid the conclusiveness of the judgment as to one of those facts by arguing that the prior judgment could have been based on a different legal theory which would not have necessitated a finding as to the fact now contested. Since the finding as to that fact was essential to the only legal theory

actually utilized in the prior judgment, it must have received diligent consideration, and it was subject to a meaningful appeal.

In First Nat'l Bank of Covington v. City of Covington, 129 F. 792 (C.C.E.D. Ky.1903), aff'd, 198 U.S. 100, 25 S.Ct. 562, 49 L.Ed. 963 (1905), the prior suit involved the barring of taxes on alternative grounds at the trial level: (1) a contract precluded taxation; and (2) the tax was invalid. In the second suit the taxpayer set up the finding as to the contract as a bar to further taxation, and the court held that the existence of the contract was concluded by the prior judgment. The case is, however, significantly different, since the city appealed in the prior case and the Court of Appeals affirmed solely on the basis of the contract, and did not reach the alternative question of the validity of the tax. Since the appellate court rested on a single ground, its judgment was conclusive as to facts necessary to that ground.

Finally, in Hardware Mutual Ins. Co. of Minnesota v. Valentine, 119 Cal.App. 2d 125, 259 P.2d 70 (D.Ct. of App., 4th D.1953), the court held that a prior judgment was conclusive as to the defendant's negligence, even though the prior judgment rested on three independent alternative grounds, and a finding of negligence was essential to only one of those grounds. The court, however, did not consider the effect of having alternative grounds, since it held that defendant had obtained a continuance in the present suit by claiming that the other suit would be res judicata in this one, and that defendant was estopped thereafter to deny that the doctrine applied in this suit.

commentators. Restatement of the Law of Judgments § 68 Comment n; 1B Moore, Federal Practice ¶0.443[5] at 3921–23 (1961); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 11–12 (1942); Case Note, 39 Va.L.Rev. 566, 568 (1953). But see Note, Developments in the Law, Res Judicata, 65 Harv.L. Rev. 818, 845 (1952). However, these apparently contrary authorities either do not attempt to justify their position, or else they stated the proposition that a judgment based on alternative grounds either precludes necessary issues decided in each or precludes no issues necessary to only one ground, apparently content that the statement of the proposition compels acceptance of the former alternative. While we agree with the proposition as stated, in the present circumstances we choose the latter alternative for the reasons expressed above.

Nor is this situation controlled by the cases holding that decisions resting on alternative independent grounds are *stare decisis* as to each independent ground. See, e.g., Massachusetts v. United States, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968 (1948); Dragor Shipping Corp. v. Union Tank Car Co., 371 F.2d 722 (9 Cir. 1967). In *stare decisis*, the questions of law decided in each of the alternative grounds may be reconsidered when the issues again arise, and the rules thereby established can be modified or overturned if there are compelling reasons. In the case of collateral estoppel, the prior judgment precludes any reconsideration of the issues concluded (with certain narrow exceptions).

■ Since Judge Rosling's finding of Evelyn's actual intent to hinder and delay her creditors was necessarily found in connection with only one of the three independent grounds establishing an act of bankruptcy, this finding cannot be given conclusive effect in the present litigation as to her application for a discharge. Since we hold that Judge Rosling's finding is not conclusive as to Evelyn's actual intent, we need not consider Evelyn's other contentions that the trustee, Schwartz, lacks privity with the petitioning creditor, Chase, in the involuntary adjudication, and that the trustee should be barred by his allegedly inconsistent statements from asserting collateral estoppel against her.

Reversed and remanded with instructions to order the referee in bankruptcy to entertain Evelyn's opposition to specification of objection number 3 to her discharge.