**M. PRUSMAN, LTD. and Sahar Insurance Co., Ltd., Plaintiffs,**

**v.**

**ARIEL MARITIME GROUP, INC., Charles Klaus & Co., Ltd. (d/b/a Javelin Line), Martyn C. Merritt and Mary Anne Merritt (a/k/a Mary Anne Pawlowski), Joshua Dean & Co., Ltd., Florence Wlezen (a/k/a Florence Pawlowski), and Florence Pawlowski (a/k/a Florence Wlezen), Defendants.**

No. 88 Civ. 8300 (RWS).

United States District Court, S.D. New York.

Dec. 23, 1991.

---

Waesche, Sheinbaum & O'Regan, P.C., New York City (John R. Keough, III, of counsel), for plaintiffs.

Ronald Saffner, New York City, for defendants.

## OPINION

SWEET, District Judge.

This action, brought by M. Prusman, Ltd. and Sahar Insurance Company, Ltd. (collectively "Prusman" or the "Plaintiffs") against Ariel Maritime Group, Inc. ("Ariel"), Charles Klaus & Co., Ltd. ("Klaus"), d/b/a Javelin Lines, Martyn C. Merritt ("Merritt"), Mary Anne Merritt, a/k/a Mary Ann Pawlowski ("Mrs. Merritt"), Joshua Dean & Co. Ltd. ("Dean"), Florence Wlezen, a/k/a Florence Pawlowski, and Florence Pawlowski (collectively "the Defendants"), was tried before the Court on October 22, 1991. Upon the findings and conclusions set forth below, judgment will be enforced against the Defendants jointly and severally.

*Prior Proceedings*

On April 25, 1988, judgment was entered for $28,682.08 with interest and costs arising out of the loss of goods shipped on board the M/V NATHANEL (85 Civ. 9485 (RWS)).

The instant action was filed on November 18, 1988, to enforce that judgment. Discovery was had, and the Defendants' motion to dismiss for lack of jurisdiction and failure of service was denied on August 10, 1988. Prusman's motion for summary judgment was granted in part and denied in part on July 11, 1990.

The principal issue remaining to be tried was the personal liability of the Merritts and whether or not the Defendants other than Ariel were the alter ego of Ariel or the Merritts.

*Facts*

The Plaintiffs are Israeli corporations with offices in Israel.

Merritt was a resident of New Rochelle, New York, and was the president and a shareholder of Ariel. Mrs. Merritt is Merritt's wife. She lived with him in New Rochelle and was an officer and director of Ariel. The Merritts maintained offices in the same space as Ariel on West Street and/or West 39th Street in New York City.

Ariel was organized as an Illinois corporation, with its principal place of business at 90 West Street and/or 323 West 39th Street, New York, New York, and was doing business under the name of Javelin Lines ("Javelin"). On June 1, 1988, Ariel changed its name to AMG Services, Inc. ("AMG"), but did not change its corporate form.

Klaus was organized as a Hong Kong corporation and was likewise doing business under the name of Javelin. It was incorporated in 1978 upon the written instructions of Merritt. Klaus's name derives from an amalgam of Merritt's middle name, "Charles," and the middle name of his former partner, Peter Schauer. Merritt and Schauer formed Klaus as 50/50 partners, but their business association ended in about 1980. Javelin was a division of Klaus and a trade name of Ariel.

Dean was organized as an English corporation. The sole shareholders of Dean are Broadview Developments, Ltd., with one share, and Klaus, with 999 shares.

The sole shareholders of Klaus are Dean, with 999 shares, and Merritt, with one share. The Merritts consider Klaus the ultimate holding company of Dean. The Merritts also controlled Broadview and were officers of and controlled Ariel.

In October and November 1984, Javelin issued two negotiable bills of lading for the carriage of Prusman's cargo on board the M/V NATHANEL from Germany to Israel. Javelin issued its bills of lading as a division of Klaus. The bills of lading were negotiated and transferred to plaintiff M. Prusman Ltd. During the voyage, the shipment suffered damage. The present action seeks to enforce the prior judgment arising out of this loss.

On May 31, 1991, Merritt agreed to plead guilty to a conspiracy to commit fraud that involved the submission of false bills of lading. Merritt reaped $936,000 from the conspiracy. "The payment was made pursuant to an Agency for International Development program to supply needed foodstuffs to the country of Sudan. In return for the $936,000, the defendant [Merritt] and his associates were supposed to ship and deliver high-quality powdered non-fat milk." Trial Exhibit 5 at 1.

In sentencing Merritt, the Honorable John S. Martin found that Merritt "engaged in obstruction of justice when he submitted a false document to the government," to wit, a fabricated fax allegedly confirming a payment and "official looking stationery with the title 'Maritime Bureau of Investigations' ...—which 'obviously was designed to mislead the recipient of the letter into believing that they were responding to some official government inquiry'—with "a false statement that the payment had been made." Judge Martin further found that "Merritt continues to have control over $670,000 of the proceeds, which he is attempting to hide so that it may not be used to pay restitution," and that $660,000 of such funds ended up in an account controlled by "Mrs. Merritt, the defendant's business associate."

Judge Martin also found that the evidence "indicated that all decisions relating to the disposition of [the home owned by Broadview Development Corporation in which Mr. and Mrs. Merritt resided until the property was sold in 1990,] were made by Mr. or Mrs. Merritt." Moreover, he found that "the corporate documentation of Broadview from the island of Jersey, although showing Jersey residents as shareholders, clearly indicate that the people in control of Broadview were Mr. and Mrs. Merritt. Some of the corporate documentation is signed by Mrs. Pawlowski, Mrs. Merritt's mother. Her stipulated testimony, however, was that she had no knowledge of the corporation although she did from time to time sign documents for Mr. and Mrs. Merritt."

Finally, Judge Martin stated that:

[i]n view of the overwhelming evidence presented by the Government that Broadview was in fact a corporation controlled by the Merritts, the Court finds that Mr. Merritt deliberately attempted to mislead the Probation Department concerning Broadview and provided false and fraudulent information to the Probation Department concerning his financial condition not reflecting the proceeds that Broadview received from the sale of the house.

This Court also previously ordered that judgment be entered enforcing the order of the Federal Maritime Commission ("FMC") against Merritt, Ariel and various corporations in Commission Docket Number 84–38 dated September 27, 1987, assessing civil penalties of $335,000 for violations of the Shipping Act of 1916, 46 U.S.C.App. §§ 815 et seq. The FMC pierced the corporate veils of Ariel, Klaus, Javelin, Dean and other entities and found Merritt jointly and severally liable for all of the penalties by virtue of his control and direction of these corporate shells. In the words of the FMC: "The corporate records for these entities contain numerous conflicting and erroneous statements as to their ownership and

control and some of these records have been falsified." FMC Order at 42.

Specifically, the FMC found:

This record is replete with evidence that Martyn Merritt directed and controlled the corporate respondents [including Klaus and Dean] in conducting and attempting to conceal unlawful activities.... [1]

. . . . .

We find, further, that Martyn Merritt was the author of and principal beneficiary of the schemes involved in this proceeding. We agree with the Presiding Officer that Merritt was the dominant and controlling figure in the operation of the corporate respondents.

. . . . .

Merritt not only created, but changed the corporate entities and form of their ownership at will, not only when he caused Klaus stock to be issued ..., but in changing the ownership of Joshua Dean from its "incorporators" to his and his wife's names simultaneously with its creation.

. . . . .

[T]he corporations lacked individual personalties, separate and apart from Merritt or each other. We believe that the record in this case repeatedly reflects use of the corporate device by Martyn Merritt to violate the Shipping Act, essentially by defrauding the ocean carriers of freight revenues, and to hide the illegal activities carried out through these interwoven corporate shells.

. . . . .

Whether we pierce the corporate veil based upon the line of cases holding that a corporation which is merely the "alter ego" of its major owner or operator may not be used to shield the individual from liability, or on [another basis], it is clearly appropriate to do so here.

A letter submitted by Defendants, dated January 2, 1987, from W.W. Chu to Ariel (attention "Martyn Merritt") on Klaus letterhead stated: "Your wife being a notary public was kind enough to be listed as a director of our firm with her nice mother." Dean's corporate records show the Merritts as directors and as corporate secretary.

In the past, the Merritts have used names of non-existent and fictitious individuals to further their business dealings and to obstruct and cloud legal inquiry into their corporate schemes. They were the dominant and controlling figures in the operation of the corporate Defendants. The Merritts created and changed the corporate entities within their ownership at will. They caused the Klaus shares to be issued, and changed the ownership of Dean from its "incorporators" to the Merritts' names simultaneously with its creation. The corporate Defendants lacked individual personalties, separate and apart from the Merritts or each other.

The Merritts have sole signature control over the Ariel and Javelin accounts, and Ariel and the Merritts represented that Javelin deposits could be made into Ariel accounts. In January 1989, Javelin funds were deposited into Ariel's bank account and intermingled with Ariel funds. The Merritts' manipulation of the corporate devices and names of the corporate Defendants, and the absence of any meaningful assets or capitalization of such corporate shells, has prevented enforcement of the judgment against Klaus and Javelin. Since entry of the judgment, the Merritts have changed Ariel's name, and in discovery have misrepresented, misstated, and attempted to conceal their participation in the corporate Defendants and their receipt of funds on behalf of such Defendants. The Defendants have fraudulently deposited Javelin funds into Ariel accounts to avoid execution on the judgment, to the prejudice of the Plaintiffs' rights as judgment creditors.

As of the date of trial, Plaintiffs have sustained a loss in the sum of $38,815.60 (the principal amount of judgment, plus

---

1. The evidence also shows that Merritt was assisted by Mary Ann Merritt, who unfortunately is not a party to this proceeding.

interest at 9%), plus costs and attorneys fees.

*Conclusions*

■■■ This court has admiralty and maritime jurisdiction over this action to enforce a judgment in admiralty for cargo damage, and has inherent power to safeguard and protect the integrity of its judgments. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 691–92, 70 S.Ct. 861, 866–67, 94 L.Ed. 1206 (1950); *Olar Ringdals Tankrederi, A/S v. Ocean Carriers Corp.,* 1964 A.M.C. 1581 (S.D.N.Y.1964).

■■■ The doctrine of collateral estoppel, or issue preclusion, prevents Merritt from denying his domination and control of Javelin, Klaus, Dean, and Broadview. Collateral estoppel applies where there is a final judgment, an identity of parties, and an identity of issues that were necessarily decided in the prior proceeding. The party against whom estoppel is asserted must have had a full and fair opportunity to litigate the pertinent issues. *Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Moreover, an administrative agency's resolution of disputed issues of fact or law which the parties have had an adequate opportunity to litigate precludes relitigation of such issues. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Wickham Contracting Co. v. Board of Education,* 715 F.2d 21, 26 (2d Cir.1983).

On May 23, 1990, the Honorable Thomas P. Griesa ordered that judgment be entered enforcing the FMC order. Judge Griesa's opinion and the FMC's order establish that the *Gelb* standard is satisfied. The corporate Defendants and Merritt had a full and fair opportunity in that case to litigate the same issues of corporate dominance and control and of piercing the corporate veils presented in the instant case. The wrongful creation and use of the corporate Defendants under false pretenses misled the Plaintiffs, as it did the shippers and the government in the other proceeding. The wrongful activity of Defendants in the instant case is not limited to post-judgment conduct.

Judge Martin's finding that the Merritts controlled Broadview for their own unlawful purposes similarly binds Merritt here under the *Gelb* test.

In federal maritime law, "The prerequisites for piercing a corporate veil are ... clear ...: [the defendant] must have used [the corporation] to perpetrate a fraud or have so dominated and disregarded [the] corporate form that [the corporation] primarily transacted [the defendant's] personal business rather than its own corporate business." *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980); *cf. Bergesen d.y. A/S v. Lindholm,* 760 F.Supp. 976, 987 (D.Conn.1991) (Smith, Maj. J.) (in federal admiralty case, court has more flexibility in dealing with state law in deciding whether to pierce corporate veil).

"New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego." *Itel Containers International, Corp. v. Atlanttrafik, Express Service Ltd.,* 909 F.2d 698, 703 (2d Cir.1990).

The following factors are relevant in determining whether to pierce a corporate veil:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like,

(2) inadequate capitalization,

(3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes,

(4) overlap in ownership, officers, directors, and personnel,

(5) common office space, address and telephone numbers of corporate entities,

(6) the amount of business discretion displayed by the allegedly dominated corporation,

(7) whether the related corporations deal with the dominated corporation at arms length,

(8) whether the corporations are treated as independent profit centers,

(9) the payment or guarantee of debts of the dominated corporations by other corporations in the group, and

(10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir.1991).

The facts set forth above establish that the Merritts so controlled and dominated the corporate Defendants and Broadview as to justify piercing the corporate veils to reach the assets of Merritt, Mrs. Merritt, or the controlled corporate entities. Corporate formalities such as the election of directors and the keeping of corporate records were not observed. Klaus and Dean were inadequately capitalized. Funds of Javelin, Klaus and Ariel were intermingled in bank accounts controlled by the Merritts as sole authorized signatories. The Merritts shuttled funds through Broadview, a shareholder of Dean, following the sale of their personal residence and have secreted them. The Merritts are listed and otherwise shown as owners, officers, directors, and/or shareholders of all of the corporate Defendants. The Merritts and the corporate Defendants share common office space, the rent for which is paid by Ariel. The corporate Defendants had no credible discretion or arms length dealing with each other. The Defendants have presented no evidence showing that the corporate Defendants are independent profit centers. The Merritts used the home purportedly owned by Broadview as if it were their own, and have treated the sales proceeds the same way.

Neither the testimony of Merritt nor of Mrs. Merritt was offered by Defendants at trial. Accordingly, their failure to testify creates an inference that such testimony would have been adverse. *See Georgia Southern and Florida Railway Co. v. Perry*, 326 F.2d 921, 925 (5th Cir.1964).

In these circumstances, the policy justifying a disregard of the corporate form—the need to protect those who deal with the corporation—requires piercing the Defendants' corporate veils. *See Resnick Developers South, Inc.*, 933 F.2d at 139–40. The Merritts have used Javelin, Klaus, Dean, Ariel and Broadview as "alter egos" to perpetrate a fraud. Klaus and Javelin issued bills of lading that were negotiated to plaintiffs. Klaus and Javelin were not legitimate corporate entities; they were formed with fictitious names and were owned by an entity that, in turn, was owned by them. The Merritts continued to perpetrate their fraudulent scheme by disavowing any knowledge of the ownership or assets of these entities during discovery and during efforts by Plaintiffs to enforce the judgment.

Therefore, the doctrine of piercing the corporate veil will be applied here "to prevent fraud or to achieve equity." *International Aircraft Trading Co. v. Manufacturers Trust Co.*, 297 N.Y. 285, 292, 79 N.E.2d 249 (1948).

Judgment will be entered on notice.

It is so ordered.