**UNITED STATES SECURITIES & EXCHANGE COMMISSION,**
Plaintiff,

v.

**MONARCH FUNDING CORPORATION, Leo M. Eisenberg, Steven R. Cloyes, Richard O. Bertoli, and Richard M. Cannistraro, Defendants.**

**No. 85 Civ. 7072(LBS).**

United States District Court,
S.D. New York.

Oct. 28, 1997.

Carl A. Tibbetts, Howard T. Carolan, Jr., Of Counsel, Law Offices Of Richard Ware Levitt, Washington DC, for United States Securities & Exchange Commission.

Richard Ware Levitt, Of Counsel, Law Offices of Richard Ware Levitt, New York, NY, for defendant Richard O. Bertoli.

John H. Doyle, III, Of Counsel, Anderson Kill & Olick, P.C., New York, NY, for Amicus Curiae, New York Council of Defense Lawyers.

Jack Arseneault, Davis W. Fassett, Arseneault & Krovatin, Of Counsel, Chatham, NJ, for Amicus Curiae, Association of Criminal Defense Lawyers of New Jersey.

## OPINION

SAND, District Judge.

Following a remand from the United States Court of Appeals for the Second Circuit, the Plaintiff United States Securities and Exchange Commission ("SEC") renews its motion for summary judgment against the Defendant Richard O. Bertoli ("Bertoli"). Specifically, the SEC seeks reaffirmation of this Court's Final Judgment of Permanent Injunction and Disgorgement against Bertoli. (*See* SEC Ex. D.) For the reasons stated below, the Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

This Opinion represents the latest stage in the protracted litigation concerning Richard O. Bertoli. Familiarity with the facts is assumed,[1] and details are set forth below only insofar as they are relevant to the present motion.

---

1. *See, e.g., United States v. Bertoli,* 854 F.Supp. 975 (D.N.J.), *aff'd in part, vacated in part,* 40 F.3d 1384 (3d Cir.1994); *S.E.C. v. Monarch Funding Corp.,* No. 85 Civ. 7072, 1996 WL 348209, at *1 (S.D.N.Y. June 24, 1996).

The SEC initially filed suit on September 9, 1985, alleging that Bertoli violated numerous provisions of the federal securities laws in connection with the issuance of two securities, Liquidation Control, Inc. ("LCI") and Toxic Waste Containment, Inc. ("Toxic Waste"). Specifically, the SEC charged that the Defendant violated Section 10(b) of the Securities Act of 1934 ("1934 Act") and Rule 10b–5 promulgated thereunder,[2] as well as Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("1933 Act").[3] As relief, the Plaintiff sought a permanent injunction and disgorgement of the Defendant's ill-gotten gains. *See S.E.C. v. Monarch Funding Corp.,* No. 85 Civ. 7072, 1996 WL 348209, at *1 (S.D.N.Y. June 24, 1996).

This civil case was placed on the Court's suspense calendar pending the outcome of a related criminal prosecution in the United States District Court for the District of New Jersey ("Related Prosecution"). *See United States v. Bertoli,* 854 F.Supp. 975 (D.N.J.), *aff'd in part, vacated in part,* 40 F.3d 1384 (3d Cir.1994). The indictment in the criminal case charged Bertoli with two racketeering counts under RICO, 18 U.S.C. § 1962(c)–(d), and several obstruction of justice counts. The RICO counts included as underlying predicate acts the fraudulent securities schemes concerning LCI and Toxic Waste ("Stock Manipulation Schemes"). *See Bertoli,* 854 F.Supp. at 991–97 (providing detailed description of factual predicates for both RICO claims).

Following a three-month trial, Bertoli was found guilty of one count of obstruction of justice under 18 U.S.C. § 1503, and one count of conspiracy to obstruct justice under 18 U.S.C. § 371. *Id.* at 1009. The Defendant was acquitted of the remaining counts, including the RICO charges. *Id.* On March 28, 1994, the Honorable Alfred J. Lechner, Jr., sentenced Bertoli to two concurrent prison terms of 100 months, coupled with supervised release and a fine of $7 million. *Id.* at 1126.

---

2. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.

3. *See* 15 U.S.C. §§ 77e(a)–(c), 77q(a).

Bertoli appealed his conviction and sentence. The Court of Appeals for the Third Circuit affirmed Bertoli's conviction, but vacated his sentence and remanded for re-sentencing. *Bertoli,* 40 F.3d at 1401–11. Specifically, the Third Circuit vacated the Defendant's sentence after finding that: (1) by using the 1993 Sentencing Guidelines Manual, the court imposed a sentence in excess of what would have been permissible under the 1989 Manual, thereby violating Bertoli's right against ex post facto punishment; and (2) the court's decision to impose a fine of $7 million was not supported by evidence under the clear and convincing evidence standard. *Id.* at 1407, 1411. On remand, Judge Lechner issued a three-page order resentencing Bertoli to two concurrent prison terms of 78 months, in addition to supervised release and a fine of $100,000. (SEC Ex. E at 1–3 ("Resentencing Order").)

Following Bertoli's resentencing, the SEC moved for summary judgment in this action. It argued that Bertoli was collaterally estopped, by virtue of certain findings of fact made at Bertoli's sentencing hearings ("Sentencing Findings"), from defending the securities claims in this suit. Bertoli filed a cross-motion for summary judgment.

On June 24, 1996, this Court granted in part the SEC's motion for summary judgment and assessed damages of $1,466,000 plus interest. *See Monarch Funding,* 1996 WL 348209, at *11 (finding Bertoli guilty of violating § 10(b) of the 1934 Act, and Rule 10b–5 promulgated thereunder, as well as § 17(a) of the 1933 Act). In so doing, we found that the doctrine of offensive collateral estoppel was appropriate under the particular facts of this case. To wit:

> As to defendant Bertoli, the factfinding contained in the district court's sentencing opinion, issued at the conclusion of Bertoli's criminal trial, *see Bertoli,* 854 F.Supp. at 1128–30, has collateral-estoppel effect in the instant matter. In arriving at its sentencing, the court made certain factual findings, based on the evidence adduced at trial and reports submitted for sentencing purposes, "by at least a preponderance of the evidence." *Id.* at 1126. Facts adduced

by a trial court carry the same estoppel weight as facts found by a jury or admitted in a plea allocution. . . .

. . . . .

Bertoli was not convicted of violating Section 10(b) or Rule 10b–5. However, in conjunction with the imposition of sentence, the trial court made various factual findings concerning Bertoli's criminal stock activities. Judge Lechner concluded that Bertoli had both orchestrated and directed the fraudulent LCI and Toxic [Waste] schemes, without disclosing to the public his beneficial stock ownership, in an attempt artificially to manipulate prices and profit unlawfully. *Bertoli,* 854 F.Supp. at 1128–30. The court also found persuasive evidence of Bertoli's involvement in the circulation, by use of the mails, of [co-defendant Richard M.] Cannistraro's misleading research report on Toxic [Waste]. *Id.* at 1129.

These factual findings support, "by at least a preponderance of the evidence," *id.* at 1126, the conclusion that Bertoli acted in violation of Section 10(b) and Rule 10b–5. *Id.* at *7–8 (finding Bertoli also guilty of Section 17(a) violation). In a separate Opinion dated October 3, 1996, this Court assessed prejudgment interest of $1,076,079.16, and directed that final judgment be entered. *See S.E.C. v. Monarch Funding Corp.,* No. 85 Civ. 7072, 1996 WL 562983, at *2–3 (S.D.N.Y. Oct.3, 1996).

Bertoli then filed a motion under Rules 59(e) and 62(b), seeking to amend and stay this Court's judgment. The Court denied this motion on November 14, 1996. Bertoli thereafter appealed to the Second Circuit. While the appeal was pending, however, the SEC discovered the existence of a resentencing opinion written by Judge Lechner ("Resentencing Opinion") that was not brought to the attention of this Court during its consideration of the aforementioned motions for summary judgment. (Pl.'s Mem. Supp. Renewed Mot. Summ. J. at 4.) On the SEC's motion, the Second Circuit remanded this action to permit the Court "to consider materials that were not part of the record when the district court granted in part the sum-

mary judgment motion underlying this appeal." (SEC Ex. A.)

## DISCUSSION

### A. *The General Rule*

The Defendant argues that the doctrine of offensive collateral estoppel should never apply to judicial findings of fact rendered at sentencing. This position is likewise advanced by the New York Council of Defense Lawyers ("NYCDL") and the Association of Criminal Defense Lawyers of New Jersey ("ACDLNJ"), which have jointly submitted a brief as *amici curiae*. (*Amici*'s Br. at 13.) For the reasons articulated below, the Court declines to adopt a *per se* rule prohibiting the application of collateral estoppel to sentencing findings. Instead, the Court concludes that collateral estoppel may apply to fact determinations at sentencing provided that, after close scrutiny, the trial court finds that the traditional safeguards associated with this doctrine are present.

#### 1. *Offensive Collateral Estoppel*

 Under the doctrine of offensive collateral estoppel, a litigant who was not a party to a prior judgment may nevertheless use that judgment "offensively" to prevent a defendant from relitigating issues resolved in the earlier proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Specifically, "[i]n this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated

unsuccessfully in an action with another party." *Id.* at 326 n. 4, 99 S.Ct. at 649 n. 4.

 The general rule is to disallow the use of offensive collateral estoppel where the plaintiff could easily have joined in the earlier action,[4] or where application of this doctrine would be "unfair" to the defendant. *Id.* In *Parklane Hosiery*, the Supreme Court offered three illustrations of such unfairness. First, "[i]f a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Id.* at 330, 99 S.Ct. at 651. Second, allowing offensive collateral estoppel "may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.*[5] Third, permitting offensive estoppel may be unfair where "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 330–31, 99 S.Ct. at 651; *see also United States v. International Broth. of Teamsters*, 905 F.2d 610, 621 (2d Cir.1990).

 The Second Circuit has explained that the application of collateral estoppel "elevates uniformity and repose above correctness." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Accordingly:

> In recognition of this consequence the doctrine of collateral estoppel has limitations to assure that the precluded issue was

---

4. The SEC was precluded from joining Bertoli's criminal prosecution. (*See* Pl.'s Reply Further Supp. Renewed Mot. Summ. J. at 2 n. 1.) Consequently, this aspect of the doctrine is irrelevant to the outcome of this case.

5. As discussed *supra*, the Defendant was acquitted of the RICO counts which embraced, *inter alia*, the LCI and Toxic Waste stock schemes as predicate acts. Pursuant to these acquittals, Bertoli argues that collateral estoppel is barred because the facts determined at sentencing are inconsistent with the jury's verdict at trial. This claim is meritless, for two reasons. First, an acquittal " 'is not a finding of fact .... [but only] an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt.' " *United States v.*

*Watts*, —— U.S. ——, ——, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997) (citation omitted). Thus, a court may enhance a sentence on the basis of acquitted conduct because the evidentiary standard at sentencing is the less rigorous preponderance of the evidence standard, just as in a civil case. *Id.* Second, conviction under RICO requires proof of numerous elements beyond the simple finding that the defendant committed the alleged predicate acts. *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Accordingly, Bertoli's acquittal on RICO charges does not dispose of his guilt concerning the commission of the underlying predicate offenses.

carefully considered in the first proceeding. For the bar to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.; see also Levy v. Kosher Overseers Assoc., Inc.,* 104 F.3d 38, 41 (2d Cir.1997).

■ Moreover, appellate review plays a central role in assuring the accuracy of decisions. *Gelb,* 798 F.2d at 44. Accordingly, "although failure to appeal does not prevent preclusion, inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion." *Id.* (citations omitted); *cf. Johnson v. Watkins,* 101 F.3d 792, 795 (2d Cir.1996) (discussing availability of appellate review under New York law).

2. *Application of Offensive Collateral Estoppel to Facts Determined at Sentencing*

The application of offensive collateral estoppel to sentencing findings is a novel issue.[6] The Court has located only two cases that have discussed this issue, albeit briefly. *See M. Prusman, Ltd. v. Ariel Mar. Group, Inc.,* 781 F.Supp. 248, 250, 252 (S.D.N.Y. 1991) (holding that sentencing court's determination after guilty plea that defendants "controlled" corporation had estoppel effect in subsequent civil suit); *cf. United States v. Montes,* 976 F.2d 235, 239 (5th Cir.1992) (commenting summarily that "[f]actual findings by the district court as to the relevant conduct for sentencing purposes must be incorporated into a final judgment in order to have preclusive effect") (dicta), *cert. denied,*

507 U.S. 1024, 113 S.Ct. 1831, 123 L.Ed.2d 459 (1993). Thus, the Court finds it appropriate to discuss several potential dangers underlying the extension of collateral estoppel to sentencing findings.

One danger is that the procedural protections available at sentencing are often considerably narrower than those available in a plenary civil action.[7] In general, there is no absolute right to a full-blown evidentiary hearing at sentencing. *United States v. Slevin,* 106 F.3d 1086, 1091 (2d Cir.1996); *United States v. Prescott,* 920 F.2d 139, 143–44 (2d Cir.1990). Moreover, because the procedure adopted to resolve factual disputes rests in the "sound discretion" of the district court, *id.* at 144, a defendant may be denied, *inter alia,* the opportunity to conduct prehearing discovery or call witnesses during the sentencing hearing. *See, e.g., United States v. Pugliese,* 805 F.2d 1117, 1123 (2d Cir.1986). However:

> The Guidelines state in § 6A1.3(a) in relevant part, "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." The Commentary that follows specifies that the "sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." Guidelines § 6A1.3, Commentary at 6.2.
>
> It further suggests that written statements by counsel or affidavits of witnesses often may be sufficient but that "more formality"—including in some cases an evidentiary hearing—may be "unavoidable if the sentencing process is to be accurate and fair." *Id.*

---

6. Of course, it is well settled that a criminal conviction, whether by jury verdict or guilty plea, may constitute collateral estoppel in a subsequent civil proceeding. *See, e.g., United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978). *See generally* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4474 (1981 & Supp.1997) (entitled "Criminal Conviction as Preclusion in Civil Proceeding").

7. We note that the Seventh Amendment right to a trial by jury does not attach to an SEC enforcement proceeding. *See S.E.C. v. Commonwealth Chem. Secs., Inc.,* 574 F.2d 90, 96–97 (2d Cir. 1978). Thus, although the deprivation of this right may be a consideration for courts applying collateral estoppel to sentencing findings in the future, no such concern is relevant here.

*Prescott,* 920 F.2d at 144. Thus, although the Defendant is correct to point out that the procedural protections at sentencing may be inadequate for purposes of collateral estoppel,[8] this is not an inevitable conclusion. *See, e.g., M. Prusman, Ltd.,* 781 F.Supp. at 252 (stating that *Gelb* test was satisfied). Consequently, prior to applying collateral estoppel to sentencing findings the court should undertake a searching examination of the earlier sentencing proceedings to ensure that the defendant had a full and fair opportunity to litigate the relevant issues.

Another danger is that a criminal defendant's incentives at sentencing may differ significantly from his incentives during a subsequent civil proceeding. As was summarized by the *amici curiae*:

> [A] criminal defendant will frequently choose not to challenge prospective issues prior to or during his or her sentencing hearing for any number of reasons, *e.g.,* a belief that the issue is irrelevant to the calculation of his or her Guidelines offense level, a belief that the sentencing court will adhere to a prosecutorial departure motion or other recommendation, a belief that the procedural limitations inherent in the hearing will preclude him or her from prevailing on the issue, a refusal to waive his or her Fifth Amendment privilege against self-incrimination by testifying at that hearing, a refusal to risk enhancement of his sentence should the court disbelieve his or her testimony at that hearing, etc.

(*Amici*'s Br. at 19.) Under certain circumstances, such differing incentives may give rise to the conclusion that application of collateral estoppel is inappropriate. *See Parklane Hosiery,* 439 U.S. at 330–31, 99 S.Ct. at 651; *cf. Gutierrez v. Coughlin,* 841 F.2d 484, 486 (2d Cir.1988) (denying application of offensive collateral estoppel in 42 U.S.C. § 1983 suit where defendants could not have been held personally liable in earlier Article 78 proceeding). Accordingly, courts must

carefully examine the underlying realities of the sentencing hearing prior to applying collateral estoppel to sentencing findings. We now proceed to conduct such an examination.

### B. *The Instant Case*

■ As mentioned above, *Parklane Hosiery* and its progeny dictate the requirements for the application of collateral estoppel. *See id.* at 326–31, 99 S.Ct. at 649–51; *Gelb,* 798 F.2d at 44. These requirements are examined in the context of this case.

#### 1. *The Issues*

At the outset, the Court must determine whether the issues in both proceedings are identical, and whether in the prior criminal proceeding these issues were actually litigated and actually decided. *Id.* Both of these requirements are satisfied here.

The factual issues requiring resolution in this civil suit concern Bertoli's actions with respect to LCI and Toxic Waste. Specifically, the key issues are twofold: (1) whether Bertoli committed securities fraud with regard to LCI and Toxic Waste; and (2) if so, whether he reaped illegal profits from his fraudulent actions.

These exact issues were at stake during Bertoli's first sentencing hearing. Moreover, they were actually litigated and actually decided ("Sentencing Findings"). The following two passages provide irrefutable evidence:

> Bertoli was the orchestrator of the LCI Scheme, the Toxic Waste Scheme and the High Tech Scheme (collectively, the "Stock Manipulation Schemes") at Monarch. Bertoli brought LCI, Toxic Waste and High Tech to Monarch, he directed how the IPOs for each of those companies were going to be structured and he was the person ultimately responsible for directing the Stock Manipulation Schemes.

. . . . .

---

8. *Cf. Golino v. City of New Haven,* 950 F.2d 864, 869–70 (2d Cir.1991) (declining to apply estoppel to judicial finding of probable cause at suppression hearing where defendant was unable to call witnesses or offer evidence), *cert. denied sub nom. Lillis v. Golino,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *Sprecher v. Gra-*

*ber,* 716 F.2d 968, 972 (2d Cir.1983) (negating application of collateral estoppel to judicial findings made in summary proceeding enforcing SEC subpoena where defendant had "heavy burden" of proving that subpoena was sought for invalid purpose and his showing had to be made without the aid of discovery).

Both at trial and from the evidence submitted by the Government for purposes of sentencing, it was established that Bertoli, Eisenberg and Cannistraro profited in excess of $6,000,000 from the Stock Manipulation Schemes. Bertoli and his co-conspirators gained $462,820.00 from the LCI Scheme, $4,235,180.00 from the Toxic Waste Scheme and $1,768,727.50 from the High Tech Scheme. The profits from the Stock Manipulation Schemes were to be divided equally among Bertoli, Eisenberg and Cannistraro.

*Bertoli*, 854 F.Supp. at 1128, 1130 (citation omitted). Furthermore, these same issues were at stake and actually determined in the second sentencing proceeding. (*See* SEC Ex. B at 1 n. 1, 2, 10, 19–20.)

### 2. *Opportunity to Litigate*

The Court must also determine whether the Defendant had a full and fair opportunity to litigate the Sentencing Findings. Bertoli argues that he "was not given a full and fair opportunity to dispute, at sentencing, the government's claim that he committed securities fraud violations." (Def.'s Mem. Opp. Renewed Mot. Summ. J. at 22.) The Court disagrees.

The procedures adopted by Judge Lechner afforded Bertoli ample opportunities to challenge the Government's evidence supporting the Sentencing Findings. With respect to the first sentencing hearing, the court wrote:

> The evidence relied upon for purposes of sentencing is comprised of facts established during the trial, the facts given in the Presentence Report and the evidence submitted by the Government for sentencing. Neither party sought to present evidence at the hearing held on 28 March 1994 (the "Sentencing Hearing"). In fact, when counsel for both parties were asked whether they wanted to submit evidence during the Sentencing Hearing, both parties indicated their willingness to have sentencing determined on the basis of their submissions. *See* Sentencing Hearing Transcript at 4–5.

The parties had a full opportunity to contest the contents of the forty-eight page Presentence Report. As is apparent, this was not the usual case where sentencing occurs within forty-five days of conviction. *In this case, there was approximately seven months from when Bertoli was convicted and the Sentencing Hearing. In that time, Bertoli and the Government presented 611 pages of submissions regarding sentencing.*

*Bertoli*, 854 F.Supp. at 1126 n. 234 (emphasis added).

In making the Sentencing Findings, Judge Lechner relied on the trial record as well as two hearsay documents. These latter items were: (1) the affidavit of a government investigator, Michael J. Cahill ("Cahill Affidavit"); and (2) the plea allocution of a co-conspirator, Richard Cannistraro ("Cannistraro Allocution"). *Id.* at 1126 n. 233. Bertoli argues that the sentencing court's use of these documents put him at an unfair disadvantage.

The Court rejects Bertoli's argument for three reasons. First, sentencing courts are permitted to use hearsay evidence. *United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994), *cert. denied*, 513 U.S. 1092, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995). Second, Judge Lechner found that the Cahill Affidavit and the Cannistraro Allocution were "strongly reliable sources" and that the evidence contained therein was "corroborated by facts established at trial." *Bertoli*, 854 F.Supp. at 1126 n. 233. Most important is the third reason, *viz.*, that at resentencing Bertoli did actually call Cahill as a witness, and had the opportunity to do the same with Cannistraro. (*See* SEC Ex. B at 9.) As Judge Lechner described in his Resentencing Opinion:

> A resentencing hearing took place on 13 March 1995. At a hearing for bail pending appeal on 6 March 1995, counsel for Bertoli, responding to an inquiry as to when resentencing could be scheduled responded: "We're ready. Whenever the Court wants to resentence we're prepared." At the bail hearing, counsel for Bertoli was asked twice whether he wanted to call any witnesses for resentencing purposes and responded: "We do not want to call anybody." *At the resentencing hearing, counsel for Bertoli did, however, call Special Agent Michael Cahill of the Federal Bureau of Investigation.*

At the conclusion of the examination of special Agent Cahill, counsel to Bertoli was asked whether there were "any other witnesses or anything else [he] want[ed] to offer." The answer was: "No." *Significantly, Bertoli's co-defendant, Richard Cannistraro, was in court for the entire hearing and was the subject of a discussion concerning findings which were based upon his plea allocution. Nevertheless, Bertoli did not seek to call Cannistraro as a witness.*

After giving both Bertoli and the Government an opportunity to offer additional evidence or call additional witnesses, counsel for Bertoli was given the opportunity to argue or comment on the Addendum to the Presentence Report. Counsel declined the opportunity. Significantly, he did not address the examination of Special Agent Cahill and how such examination affected, if it did, the Addendum to the Presentence Report of the guideline calculation, as set out by Probation. Before explaining the guideline calculation, counsel was again given the opportunity to argue on these issues and declined the opportunity. After the guideline range was explained, counsel for Bertoli was given the opportunity to speak concerning sentencing; he declined to do so. Bertoli was given the opportunity to, and did speak, concerning his resentencing. Thereafter, sentence was imposed, as set out above.

*Id.* at 9–10 (citations omitted) (emphasis added).

In light of the substantial procedural devices utilized by Judge Lechner, this case is distinguishable from the numerous cases the Defendant cites which have held that collateral estoppel is inapplicable because of procedural deficiencies at the first proceeding. *See, e.g., Golino,* 950 F.2d at 869–70 (defendant denied opportunity to call witnesses or offer evidence at first proceeding); *Sprecher,* 716 F.2d at 972 (defendant denied discovery completely in earlier proceeding). Accordingly, the Court rejects the Defendant's contention that he was denied a full and fair opportunity to litigate the relevant facts at sentencing.

Moreover, Bertoli cannot claim unfairness with respect to the issue of foreseeability. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. at 651. This action was commenced in 1985, a full four years before the first indictment was returned against Bertoli and one decade prior to his resentencing. *See Monarch Funding,* 1996 WL 348209, at \*2. Indeed, this case was put on suspense for the express reason of allowing Bertoli's criminal case to be decided first.

### 3. *Necessity*

The doctrine of collateral estoppel requires that the issues previously litigated must have been "necessary" to the outcome of the prior litigation. *Gelb,* 798 F.2d at 44. In the context of this case, an analysis of this aspect of the doctrine also requires an examination of the appellate review to which the Sentencing Findings were subjected.

It is indisputable that Judge Lechner's Sentencing Findings were necessary to the imposition of Bertoli's first sentence. Specifically, the Sentencing Findings were necessary in two regards. First, after determining that § 2X3.1 (Accessory After the Fact) was applicable, the court increased the offense level by 14 under § 2F1.1(b)(1), which provides for an increase in the base offense level depending on the loss resulting from the fraudulent conduct. The court determined that the 14–level increase was appropriate because the loss involved as a result of the Stock Manipulation Schemes was greater than $5,000,000. The court stated that the loss "was measured by taking into consideration the gain to Bertoli and his co-conspirators as a result of the Stock Manipulation Schemes, which has been calculated at more than $6,000,000." *Bertoli,* 854 F.Supp. at 1146.

Second, the Sentencing Findings were necessary to support the imposition of the $7 million fine against Bertoli. *See id.* at 1154 (citing relevant provisions of U.S.S.G.). As the court explained:

In the instant case, Count Three and Count Six charge, *inter alia,* that Bertoli moved the illicit proceeds of the Stock Manipulation Schemes to Andorra in an effort to obstruct justice. It was estab-

lished that approximately $8,700,000 was moved and that Bertoli moved the funds so the Government could not reach it. It was further established that the $8,700,000 included (1) $5,086,593.94 from Centurion (Cannistraro's company), (2) $3,132,956.09 from Eastern (Eisenberg's company) and (3) $471,580.61 from Beecham (Bertoli's company).

Although the documentary evidence at trial indicates the portion of the $8,700,000 attributable to Bertoli is less than $500,000, it has been established Bertoli *controlled* all the money once it reached Andorra.

*Id.* at 1155 (emphasis added). The court further noted that as part of their plea agreements, co-conspirators Eisenberg and Cannistraro had forfeited to the Government their interest in the funds held by Eastern and Centurion. The Government, however, had only been able to recover $789,083.89 of that money because the rest was under Bertoli's "control" in Andorra. *Id.* Accordingly, the court imposed the $7 million fine against Bertoli "to 'disgorge' the gain of Bertoli's criminal activities." *Id.*

On appeal, Bertoli challenged both the application of § 2X3.1 and the $7 million fine. With regard to § 2X3.1, the Defendant argued that under the 1989 version of the Guidelines Manual, the sentencing court was prohibited from using this provision when the defendant's conduct was directed at avoiding punishment to himself (as opposed to assisting another person to escape punishment for a crime). The Third Circuit agreed with Bertoli's interpretation of the law, and proceeded to vacate this portion of Bertoli's sentence because "[t]he district court found that Bertoli's obstructionist conduct involved attempting to conceal the predicate offenses to the racketeering acts with which he was charged." *Bertoli*, 40 F.3d at 1404. Accordingly, the 14–level adjustment under § 2F1.1(b)(1)—which could only have been made pursuant to a determination that § 2X3.1 was applicable—was also vacated.

On remand, the court did not reimpose the 14–level adjustment, and thus the Sentencing Findings pertinent to this action were not "necessary" to Bertoli's final sentence in this regard.[9]

With respect to the $7 million fine, Bertoli argued that "the facts upon which the district court based its decision simply are not supported by the record." *Id.* at 1408. In analyzing this claim, the Third Circuit found that the district court had not applied the correct evidentiary standard. Specifically, because the fine constituted an upward departure by a factor in excess of 50, the Third Circuit held that the departure must be supported by clear and convincing evidence, rather than by a mere preponderance of the evidence, which was the standard applied by the district court. *Id.* at 1410. The appellate court then focused on whether Bertoli "controlled" the funds in question, and reversed because the district court's findings "[we]re not supported by the record and therefore [we]re clearly erroneous." *Id.* The Third Circuit labeled the court's assumption that Bertoli controlled the money "speculative" and stated that "[w]hile such speculation *may* have survived scrutiny under the preponderance of the evidence standard. it certainly cannot withstand scrutiny under the clear and convincing evidence standard." *Id.* at 1411.

On remand, Judge Lechner declined to reimpose a fine of $7,000,000. Instead, he imposed a fine of $100,000. (SEC Ex. B at 33.) This latter figure was within the Guidelines range for Bertoli's offenses. (*Id.*) Judge Lechner apparently felt constrained by the Third Circuit's reversal. In this vein, he wrote that although he believed that reimposition of the $7 million fine would be appropriate, "because of the comments of the Circuit concerning the imposition of a $7 million dollar fine, *Bertoli*, 40 F.3d at 1407–11, a fine of $100,000.00 ($50,000.00 on each of Counts 3 and 6) was imposed." (*Id.*) Nevertheless, Judge Lechner proceeded to

---

**9.** *See, e.g., Buck v. United States Aviation Underwriters, Inc.*, 763 F.2d 224, 226–27 (6th Cir.1985) (holding that reversed judgment loses all preclusive effect and accordingly denying estoppel effect to jury instruction in earlier case—establishing that plaintiff was an "employee"—although sole ground for reversal was appellate finding that plaintiff was contributorily negligent as a matter of law).

set out "[t]he reasoning to justify the imposition of a $7 million fine under the 1989 Manual ... should the Government choose to cross-appeal." *Id.* The Government, however, declined this invitation. Thus, a finding that Bertoli controlled illicit profits was not a necessary component of the fine ultimately imposed.[10] Overall, then, although the Sentencing Findings were necessary to Bertoli's original sentence on two grounds, both of those grounds disappeared upon Bertoli's resentencing.[11]

#### 4. *Section 2J1.2(b)(2)*

This Court next confronts the question of whether the Sentencing Findings were necessary to any other aspect of Bertoli's resentencing. The Defendant contends that they were not. (Def.'s Mem. Opp. Renewed Mot. Summ. J. at 20.) We disagree.

##### a. *Securities Fraud*

The Court finds that the Sentencing Findings were necessary to support the imposition of the three-level adjustments under U.S.S.G. § 2J1.2(b)(2), which concerns a defendant's "substantial interference with the administration of justice."[12] Although the Guidelines do not provide a precise definition of this phrase, Judge Lechner focused on the portion of the Application Notes which states that substantial interference with the administration of justice "includes a premature or improper termination of a felony investigation; an indictment or verdict based upon

perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2 Application Note 1; (*see* SEC Ex. B at 14.)

Judge Lechner found that Bertoli had substantially interfered with the administration of justice with regard to all three sentencing groupings the court established for purposes of calculating the offense level. (*Id.* at 19.)[13] Group One consisted of the three conspiracies to obstruct federal court proceedings as well as Count Six; Group Two consisted of the conspiracy to obstruct the grand jury investigation; and Group Three consisted of the conspiracy to obstruct the SEC investigation. *See Bertoli,* 40 F.3d at 1401 (reviewing groupings). The adjustments with regard to each of these groupings is considered below.

With respect to Group Three, the sentencing court determined that the three-level increase was warranted because Bertoli had directed two key witnesses, broker Robert Cooper and co-conspirator Leo M. Eisenberg, to lie about their knowledge of Bertoli's role in the Stock Manipulation Schemes. (SEC Ex. B at 19.) Judge Lechner's citations at this portion of the Resentencing Opinion, (*see id.*), refer the reader to his earlier findings that Bertoli: (1) caused Cooper to deny that Bertoli had directed the false research reports concerning LCI that served to increase demand in the manipulated securities; and (2) instructed Eisenberg "to do whatever he had to do to 'protect'

---

**10.** Bertoli recognizes that the Securities Findings would have been significant had the Government elected to cross-appeal:

> We note that Bertoli's guilt vel non of securities fraud may have become relevant on appeal had the government taken up Judge Lechner on his invitation to appeal his finding that a fine in excess of $100,000 was precluded by the Third Circuit's first opinion. Judge Lechner, in his resentencing opinion explained why, based on the securities fraud and other circumstances, reimposition of the $7,000,000 fine was permissible. SEC Exhibit B at 33, citing Guidelines § 5E1.2(c)(2). The government, however, after filing a notice of appeal, withdrew it "in the interests of justice."

(Def.'s Mem. Opp. Renewed Mot. Summ. J. at 21 n. 15 (emphasis added).)

**11.** *See, e.g., United States v. Cheung Kin Ping,* 555 F.2d 1069, 1076 (2d Cir.1977) (holding that if appellate court reverses on one ground, the party

prevailing on appeal is not bound for purposes of collateral estoppel by adverse trial court rulings on other issues).

**12.** Judge Lechner did not make an adjustment under § 2J1.2(b)(2) during Bertoli's first sentencing, although he noted that such an adjustment might be appropriate. *See Bertoli,* 854 F.Supp. at 1144. Instead of applying the § 2J1.2(b)(2) adjustment, Judge Lechner opted to apply the § 2X3.1 adjustment; under the 1989 Guidelines, these two adjustments were mutually exclusive. *Id.* Of course, since the court's application of § 2X3.1 was reversed on appeal, Judge Lechner was then free to apply § 2J1.2(b)(2) on remand.

**13.** Thus, the offense level for Group One was 22 instead of 19; and Groups Two and Three were each 19 instead of 16. (*See* SEC Ex. B at 27–30.)

Bertoli," and that Eisenberg responded by lying about, *inter alia,* "the trading activity at Monarch in LCI and Toxic Waste securities." *See Bertoli,* 854 F.Supp. at 1131–32.

Ascertaining whether certain facts were "necessarily" determined requires deducing the logical inferences contained in Judge Lechner's rulings.[14] Specifically, absent a prior finding that Bertoli was in fact involved in preparing the LCI report, and that he had indeed directed the trading activity at Monarch concerning LCI and Toxic Waste securities, Judge Lechner could not have properly concluded that Cooper and Eisenberg's statements were mistruths warranting an adjustment under § 2J1.2(b)(2). And it is beyond dispute that Judge Lechner made precisely these findings. As he summarized in the Resentencing Opinion:

> The Group [Three] conspiracy to obstruct the SEC investigation substantially interfered with not only the SEC investigation, but also the criminal investigation in this district. For example, Cooper's perjury, and Eisenberg's perjury, were critical components of Bertoli's eight year conspiracy to cover up and conceal his illegal fraudulent trading schemes. Cooper and Eisenberg were central players in these fraudulent trading schemes. They knew the players; they knew the plan; and they knew how the plan was executed. Cooper and Eisenberg had direct, firsthand knowledge that Bertoli had masterminded and orchestrated several fraudulent securities trading schemes that allowed him to line

his pockets and the pockets of others with millions of dollars in illegal profits.

(SEC Ex. B at 19–20 (citations omitted).) Moreover:

> There is no question that, had figures such as Eisenberg and Cooper told the truth at the outset of this investigation, many unimportant witnesses would not have been interviewed. Many irrelevant documents would not have been reviewed. Many witnesses would not have been immunized. And most importantly, the Government argues, Bertoli would have in all likelihood been charged with substantive counts of mail fraud, wire fraud, and securities fraud arising from his fraudulent trading schemes—crimes on which the statute of limitations had run while the Government was attempting to break through the eight year Bertoli conspiracy to cover up and conceal.

(*Id.* at 21.) Thus, the facts concerning Bertoli's role in the LCI report, as well as his activities at Monarch, were "necessary" to the imposition of his ultimate sentence. *See, e.g., Greenblatt,* 763 F.2d at 1361–62.[15] These same facts also establish Bertoli's liability for securities fraud in this action. *See Monarch Funding,* 1996 WL 348209, at *7–8.

With respect to Group One, the sentencing court identified several factors that caused it to impose the three-level adjustment. One factor was Bertoli's movement of the Cayman Islands' money from the Cayman Islands to Andorra after the commencement of the

---

**14.** Facts determined inferentially may provide the basis for the application of collateral estoppel. *See, e.g., Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361–62 (11th Cir. 1985) (no specific factual findings were made at earlier proceeding, but collateral estoppel still applied after inferring from the arbitration decision the factual findings upon which the decision must have been predicated); *Bolanos v. Coughlin,* No. 91. Civ. 5330, 1993 WL 762112, at *12 (S.D.N.Y. Oct.15, 1993) (collecting cases and ruling that under New York law, implicit findings can serve as basis for collateral estoppel); *cf. Siegel v. Daiwa Secs. Co.,* 842 F.Supp. 1537, 1542 (S.D.N.Y.1994) (applying preclusion where either arbitrators impliedly rejected claims at earlier proceeding, or plaintiff had opportunity but failed to formally present claims so that they could have been expressly decided in arbitration).

**15.** *See also Krulls v. Davidson,* No. 87 Civ. 128, 1989 WL 49771, at *3 (N.D.N.Y. May 9, 1989) (finding that identity-of-issues requirement of collateral estoppel was met where "a necessary factual predicate to [earlier] decision was that decedent's death was not accidental, and implicit in that finding was that the defendant troopers were justified in their actions"); *Ganci v. Sweeney,* No. 86 Civ. 1260, 1987 WL 15902, at *3 (S.D.N.Y. Aug. 17, 1987) (finding that plaintiff was precluded by doctrine of collateral estoppel where implicit in the earlier state court decision "was the determination that the prosecution's failure to disclose the witness statements constituted harmless error and did not rise to the level of a constitutional violation").

criminal prosecution, which resulted in the Government being unable to collect the roughly $7 million to which it was legally entitled as a result of its prosecutions of Eisenberg and Cannistraro. (*Id.* at 16–17.) This is, of course, the precise determination which Bertoli acknowledged might establish his "guilt vel non of securities fraud." *See supra note* 10.

Another factor was Bertoli's filing of the false and fraudulent Isaacson affidavits as a basis for a motion to dismiss in the criminal case. (SEC Ex. B at 18.) In these affidavits, "it was stated that Isaacson and another individual were the owners of the Cayman Accounts, not Bertoli, Cannistraro and Eisenberg." *Bertoli,* 854 F.Supp. at 1136. A third factor—Cannistraro's perjury and false filings in connection with his 1987 sentencing—was likewise designed to conceal the Defendant's ownership interests in the Cayman Accounts. (*Id.* at 18–19.) Once again, the logical inference is crucial. Absent the prior conclusion that Bertoli orchestrated the Stock Manipulation Schemes and used the Cayman Accounts as an integral aspect of his fraud, Judge Lechner would not have been able to find properly that these particular statements (by Cannistraro, and Bertoli in the "Isaacson" affidavits)—which attempted to establish that Bertoli had no illegal interactions with the Cayman Accounts—constituted lies. Accordingly, the aforesaid facts were necessary to the imposition of the Defendant's final sentence, and thus Bertoli is collaterally estopped from denying them.

The Court reaches the same conclusion with respect to Group Two. Judge Lechner found that the shredding and hiding of records pertaining to the Cayman Accounts, as well as the transfer of proceeds contained therein, supported the three-level adjustment under § 2J1.2(b)(2). (*See* Ex. B at 21–23.) These actions are significant only because the sentencing court made the prior finding that Bertoli's use of these accounts was an integral component of the Stock Manipulation Schemes orchestrated by the Defendant. *See, e.g., Bertoli,* 854 F.Supp. at 993–94 & nn. 12, 17–18; 1012, 1130–31. Hence, the Sentencing Findings were necessary in this regard as well. Overall, then, the Court

concludes that the adjustments to Groups One, Two and Three each presuppose the validity of factual findings that establish Bertoli's liability for securities fraud in this action. *See, e.g., In re Mirulla,* 163 B.R. 912, 916–17 (Bankr.D.N.H.1994) (applying collateral estoppel where "[a]lthough it is true that 'malice' was not per se found by the state court, the written decision of the state court nevertheless is replete with factual findings from which it can be inferred that [defendant] knew his acts were certain or substantially certain to cause injury to [plaintiff]").

Bertoli counters that the sentencing court could have found that Bertoli substantially interfered with the administration of justice "without any finding at all that Bertoli was guilty of the underlying securities fraud." (Def.'s Mem. Opp. Renewed Mot. Summ. J. at 20.) In essence, Bertoli's claim is tantamount to saying that he would have received the same sentence if Judge Lechner had concluded that Bertoli had *not* orchestrated the Stock Manipulation Schemes. Indeed, Bertoli's counsel made the following representation:

> So at the second proceeding before Judge Lechner, Bertoli's guilt of the 10b–5 violation was not relevant and it wasn't relevant to his appeal.
>
> . . . .
>
> I dare say the if we had appealed, if we had appealed Judge Lechner, appealed the application of this enhancement because in fact Bertoli was not guilty of the 10b–5 violations, I am certain that the government would have come to the Third Circuit and said, What is he arguing? He's liable for the [§ ]2J1.2 enhancement regardless of whether or not he was guilty of the 10b–5 violations as Judge Lechner in fact found.

(Tr. Oral Arg. at 6.)

We disagree. Perhaps Bertoli is correct that the Government would have responded in this fashion, but that is irrelevant to our analysis. The appropriate focus is on the particular facts upon which Judge Lechner predicated his § 2J1.2(b)(2) enhancements. Specifically, the Court finds that if Bertoli had been able to persuade the Third Cir-

cuit—or Judge Lechner, for that matter— that he had no involvement with the LCI report, then Judge Lechner's reliance on Cooper's testimony to enhance Group Three would have been unjustified and grounds for reversal. Likewise, if the Defendant had persuaded the sentencing court that Isaacson, and not Bertoli, was the true owner of the Cayman Accounts, then clearly it would have been erroneous for the District Court to rely on the Isaacson Affidavits to enhance Group One. Similarly, if Bertoli could have persuaded the Third Circuit that he had no involvement in managing the trading activity at Monarch in LCI and Toxic Waste securities, then surely it would have been erroneous to label Eisenberg and Cannistraro's statements perjurious and enhance the groupings accordingly. And so forth. Accordingly, contrary to the Defendant's assertions, challenging Judge Lechner's necessary factual findings on appeal could have had a profound impact on Bertoli's ultimate sentence. (*See* Ex. B at 30–31 (explaining methodology of combining offense levels of multiple groupings).)

b. *Amount of Profits*

■ There is, however, one respect in which the Court agrees with Bertoli that an appellate challenge would have been fruitless because one particular component of the Sentencing Findings was not strictly necessary to the Defendant's ultimate sentence. This concerns the *amount* of illegal profits Bertoli garnered as a result of the LCI and Toxic Waste schemes. In this sense, the resentencing stands in marked contrast to Bertoli's original sentencing. As mentioned above, the Sentencing Findings were relevant to two aspects of the original sentence—the 14–

level increase under § 2F 1.1(b)(1) and the $7 million fine. In both situations, it was necessary for Judge Lechner to: (1) first determine that Bertoli engaged in actions constituting securities fraud; and (2) then calculate the illicit profits derived from the Stock Manipulation Schemes in order to determine the appropriate adjustments. During resentencing, however, Judge Lechner needed to determine only that Bertoli had engaged in certain actions that, as applied in this case, constitute securities fraud. The enhancement of three levels is mandatory under § 2J1.2(b)(2); *i.e.*, unlike the relevant provisions in the original sentence, § 2J1.2(b)(2) does not correlate offense levels with the amount of illicit profits stemming from the underlying acts. Thus, although Bertoli challenged the discrete issue of whether he reaped illicit profits at his first sentencing,[16] he had no incentive to contest this precise matter at his resentencing or on appeal from resentencing.

For these purposes, we assume a high degree of consultation and coordination between the two government agencies involved in these proceedings—the New Jersey United States Attorney's Office and the SEC. Indeed, one member of the prosecution, David Rosenfield, was specially designated from the Washington, D.C. office of the SEC after having been initially assigned to this civil action. (*See* Def.'s Mem. Opp. Renewed Mot. Summ. J. at 16 n. 11.)[17]

At various times the Government pursued—or could have pursued—three different vehicles to recapture Bertoli's illicit profits. First, there was the institution of this enforcement proceeding which sought, *inter alia*, the disgorgement of Bertoli's profits.

16. *See Bertoli*, 854 F.Supp. at 1146 ("Bertoli argues that the [§ 2F1.1(b)(1)] adjustment [of 14 levels] is improper because: (1) 'there was no victim and there was no loss' as a result of the Stock Manipulation Schemes, see Bertoli 1 Dec. 1993 Letter at 3–5, and (2) Bertoli neither knew nor reasonably should have known the amount of the fraud. See Bertoli Sentencing Memo at 10–12.").

17. This factor makes quite astonishing the fact that the SEC was unaware of Judge Lechner's Resentencing Opinion until preparing for the appeal of this Court's prior Opinion. Of course,

the SEC therefore did not call the Resentencing Opinion to the Court's attention; nor did Bertoli, who was then proceeding *pro se*. There was no necessity for Judge Lechner, who had issued a three-page Resentencing Order, to file a second sentencing opinion, and thus the apparent absence of such an Opinion did not cause this Court any concern. In addition, although Judge Lechner indicated in the Resentencing Order that a second opinion might be filed, that opinion was not available on Westlaw at the time this Court decided the original motions for summary judgment.

Second, there was the count in the subsequent criminal indictment seeking forfeiture of $7 million. Third, there was the $7 million fine—pursuant to U.S.S.G. § 5E1.2—that Judge Lechner imposed as part of the first sentencing.

The United States Attorney's Office agreed to dismiss the forfeiture count before Bertoli's case went to the jury. With respect to the $7 million fine, the prosecution initially filed an appeal when Judge Lechner reluctantly lowered the fine to $100,000 at resentencing; that appeal, however, was later withdrawn. As a consequence, this proceeding remains the Government's sole recourse to recoup the gains that it believes Bertoli has secreted.

Had the Government permitted the forfeiture count to go to the jury and subsequently prevailed or that count, or had it pursued its appeal concerning the appropriate fine at sentencing, then Bertoli would have had the opportunity to obtain appellate review on the merits of the calculation of the amount of his illegal gains. Although the Government is free to pursue this equitable proceeding as the basis for recapturing these gains, the Court believes that it would be unfair to permit its selection of this action as its sole remedy to effectively deprive Bertoli of an opportunity to challenge the calculations underlying the amount to be disgorged. We thus decline to apply collateral estoppel in this regard.

Accordingly, to the extent that this Opinion is inconsistent with prior Opinions and Orders of this Court, the earlier Opinions and Orders are vacated.[18] The Court will retain jurisdiction over this matter to determine the extent to which Bertoli profited from his fraudulent schemes.[19]

### 5. Appellate Review After Resentencing

Finally, then, comes the issue of the Third Circuit's review of Bertoli's resentencing. As an initial matter, it is clear that the entire sentence was affirmed. (SEC Ex. C at 3.)[20] Before applying collateral estoppel, however, the Court must ascertain the precise grounds of affirmation. The general rules were articulated in *Gelb:*

> Appellate review plays a central role in assuring the accuracy of decisions. Thus, although failure to appeal does not prevent preclusion, inability to obtain review, or the lack of review once an appeal is taken, does prevent preclusion. . . .
>
> In another context, there has been much controversy over whether alternative, independently sufficient grounds are "necessary" to a judgment so that collateral estoppel may be applied. The general rule in this Circuit is that "if a court decides a case on two grounds, each is a good estoppel." The possibility that a losing litigant might not seek appellate review on one of the grounds because the other is clearly decided correctly is thought insufficient to allow relitigation. However, if an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground.

798 F.2d at 44–45 (citations omitted).

This "controversy" concerning alternate, independently sufficient grounds extends to this case. Specifically, although Judge Lechner did not discuss this concept in the con-

---

18. *See, e.g., Monarch Funding,* 1996 WL 348209, at \*10; *Monarch Funding,* 1996 WL 562983, at \* 1–2.

19. For purposes of analytical clarity, this Court's final judgment against Bertoli may be considered to contain six discrete components. They are as follows: (1) an adjudication of liability under § 10(b) of the 1934 Act; (2) an adjudication of liability under Rule 10b–5; (3) an adjudication of liability under § 17(a) of the 1933 Act; (4) permanent injunctive relief; (5) disgorgement in the amount of $1,466,000; and (6) prejudgment interest in the amount of $1,076,079.16. (*See* SEC Ex. D at 2–4.) Applying collateral estoppel with respect to the first four components merely requires a factual finding that Bertoli committed securities fraud; the latter two components, however, also require the related, but factually distinct determination of the amount of money by which Bertoli illegally profited as a result of his fraud. *See Monarch Funding,* 1996 WL 348209, at \*5, 7–11 (enumerating elements required for each aspect of final judgment).

20. The Third Circuit issued a three-page judgment order ("Judgment Order") affirming Bertoli's resentencing. (*See* SEC Ex. C.); *see also United States v. Bertoli,* 74 F.3d 1228 (3d Cir. 1995) (table).

text of making upward adjustments to Groups Two and Three, he explicitly stated that he decided the Group One adjustment on alternate grounds. He wrote that "Bertoli's offense level is properly increased, pursuant to section 2J1.2(b)(2), on the basis of any one of these acts taken in furtherance of the Group 1 conspiracies to obstruct federal court proceedings. Each of these acts resulted in the substantial interference with the administration of justice." (*Id.* at 19.) [21] Accordingly, in light of the rules articulated in *Gelb* the Court must analyze the Third Circuit's grounds for affirmation.

Unfortunately, the Third Circuit's Judgment Order is sparse. It merely lists the contentions raised by Bertoli on appeal, and then summarily affirms Judge Lechner's resentencing. (SEC Ex. C at 1–3.) Of relevance, however, is paragraph six, which describes one of the Defendant's eight contentions. It reads:

> 6. The district court erred in imposing a three point upward adjustment under Guidelines § 2J1.2(b)(2) because the district court wrongly denied Bertoli Jencks Act discovery of Agent Cahill's prior statements and because *the adjustment was not supported by the evidence* [.]

(*Id.* at 2 (emphasis added).)

Beyond this statement, the Third Circuit failed to elaborate upon its reasoning for rejecting the Defendant's argument that the evidence was insufficient. While ordinarily this might preclude application of collateral estoppel,[22] two factors counsel otherwise here.

First, even assuming that it is impossible to discern the grounds for affirmance of the adjustment to Group One, there is no reason to believe that Judge Lechner based his rulings respecting Groups Two and Three on

alternative, independently sufficient grounds. Indeed, the adjustment to Group Three in particular appears to be justified by several factors collectively rather than any one independently. (*See* Ex. B at 19–21.) Accordingly, the Court finds that the factual findings supporting these two adjustments were necessary to the ultimate sentence, and that these findings alone are sufficient to establish Bertoli's liability for securities fraud violations in this action. *See Monarch Funding,* 1996 WL 348209, at *7–8.

Of greater significance is the second factor, which affects the "necessity" of the factual findings underlying all three sentencing groupings. Specifically, the Court finds that although Bertoli had the opportunity to appeal Judge Lechner's Sentencing Findings on appeal, he simply opted not to do so. Indeed, the Defendant has represented to this Court both orally and in writing that because "Bertoli's insistence on appeal that the evidence did not establish his guilt of securities fraud would have availed him nothing .... [h]e therefore did not argue on appeal from resentencing, and the Third Circuit did not determine, his liability for securities fraud." (Def.'s Mem. Opp, Renewed Mot. Summ. J. at 21; *see also* Tr. Oral Arg. at 6.) The Court interprets this as an explicit concession that Bertoli did not challenge the underlying factual findings that support the conclusions of both this and the New Jersey Court.

■] This concession places Bertoli in a difficult posture with regard to the adjustments to all three groupings. With regard to Groups Two and Three, which were not decided on alternate grounds, Bertoli cannot surmount the rule that failure to appeal does not prevent preclusion. *See, e.g., New Ha-*

---

**21.** To be precise, Judge Lechner identified four relevant acts: (1) Bertoli's movement of the Cayman Island's money to Andorra; (2) Bertoli's inducement of Ernest Foster to evade service of process; (3) Bertoli's filing of the Isaacson Affidavits; and (4) Cannistraro's perjury with regard to his 1987 sentencing. (*See* SEC Ex. B at 16–19.)

**22.** *See, e.g., Occidental of Umm Al Qaywayn, Inc. v. Cities Serv. Oil Co.,* 396 F.Supp. 461, 467 (W.D.La.1975) (declining to apply collateral es-

toppel where appellate court's per curiam affirmance stated only that it affirmed "for reasons stated in the district court's opinion" and it was not possible to determine what reasons formed basis for such affirmance); *cf. Owens v. New York City Hous. Auth.,* 934 F.2d 405, 409 & n. 2 (2d Cir.) (holding that failure of appellate court to address issue of incompetence precluded application of collateral estoppel with respect to that issue), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

*ven Inclusion Cases,* 399 U.S. 392, 481, 90 S.Ct. 2054, 2104, 26 L.Ed.2d 691 (1970); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950). *Gelb,* 798 F.2d at 44. Moreover, with regard to Group Three, Bertoli cannot evade the general rule in this Circuit that if a court decides a case on two grounds, each is a good estoppel. *See, e.g., Ezagui v. Dow Chem. Corp.,* 598 F.2d 727, 732–33 (2d Cir. 1979).[23] Although Bertoli appears to admit that Judge Lechner was justified in applying the § 2J1.2(b)(2) enhancements on certain grounds,[24] this type of admission does not obviate his need to have appealed the alternate, independently sufficient grounds in order to preclude their use pursuant to the doctrine of collateral estoppel. Indeed, as was confirmed in *Gelb,* "[t]he possibility that a losing litigant might not seek appellate review on one of the grounds because the other is clearly decided correctly is thought insufficient to allow relitigation." 798 F.2d at 45.

## CONCLUSION

We disagree with the position advanced in the thoughtful and helpful brief of the *amici curiae* only insofar as it is there urged that offensive collateral estoppel can *never* be applied based on findings of fact rendered in a sentencing proceeding. We agree that in most instances, for the reasons set forth *supra,*[25] the several criteria which have been applied to determine the availability of collateral estoppel will often not be satisfied in the typical sentencing procedure.

The Bertoli sentencing, however, was anything but a garden-variety sentencing and for the reasons set forth above, we conclude that the Defendant's role in the relevant frauds has been so clearly established that he is not entitled to relitigate this question. By way of summary, we note that: (1) this civil action antedated Bertoli's criminal case and thus there is no possible claim of surprise; (2) the sentencing court's findings followed protracted proceedings in which Bertoli had the opportunity, as well as ample motivation, to challenge the Government's claims as to his role in the securities violations; (3) the Defendant's role in these violations, for purposes relevant to this action, was critical to his resentencing and was reviewable on appeal; and (4) this Opinion does not implicate the Seventh Amendment right to a trial by jury because this right does not attach to SEC enforcement proceedings.

We reach the opposite conclusion, however, with respect to the factual determinations underlying the discrete issue of the amount of Bertoli's ill-gotten gains. In short, although Judge Lechner went to considerable lengths to explain why the court thought that a fine of $7 million would be appropriate at resentencing, the Government's decision to decline the district court's invitation to cross-appeal the fine actually set—in the amount of $100,000—effectively precluded the Defendant from obtaining appellate review of the fiscal calculations underlying this Court's earlier imposition of disgorgement and prejudgment interest.

Accordingly, the Court affirms Bertoli's liability on the § 10(b), Rule 10b–5 and

---

**23.** The Second Circuit recognized a limited exception to this general rule under the special circumstances of *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970). To the extent that this exception remains viable, it is inapplicable to the case at bar. *See Gelb,* 798 F.2d at 45 n. 6 (noting that *Halpern* was limited to its facts by subsequent decisions, including *Winters v. Lavine,* 574 F.2d 46, 47 (2d Cir.1978), and *Williams v. Ward,* 556 F.2d 1143, 1154 (2d Cir.), *cert. denied,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977)).

**24.** For instance, Bertoli argues that:

the § 2J1.2(b)(2) adjustment could be sustained without any finding at all that Bertoli was guilty of the underlying securities fraud; rather "substantial interference with the ad-

ministration of justice" occurs merely by virtue of the "unnecessary expenditure of substantial governmental or court resources," Application Note 1, a standard which Judge Lechner found was met by the additional investigation that was conducted as a result of Mr. Bertoli's allegedly obstructionist conduct, including the supposed shredding of documents and hiding of Cayman Island account records (of which Mr. Bertoli was acquitted), as well as and [sic] the transfer of funds between the Caymans and Andorra.

(Def.'s Mem. Opp. Renewed Mot. Summ. J. at 21.)

**25.** *See supra* Section A.2 (discussing potential dangers of applying collateral estoppel to sentencing findings).

§ 17(a) charges, and reimposes the earlier grant of injunctive relief, but vacates its rulings concerning the appropriate amount of disgorgement and prejudgment interest pending further factual findings. With regard to future proceedings, the Court directs the parties to confer with each other and submit a proposed discovery schedule by November 21, 1997.

SO ORDERED.